**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SCOTT GILMORE, | ) | |
| | ) | C.A. No. 20-1085-MN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MONSANTO COMPANY'S BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

OF COUNSEL:

**WINSTON & STRAWN LLP**
JOHN J. ROSENTHAL
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jrosenthal@winston.com

**WINSTON & STRAWN LLP**
JEFF WILKERSON
300 S. Tryon Street, Suite 1600
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800
jwilkerson@winston.com

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Monsanto Company*

Dated: January 26, 2021

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    Glyphosate and the Roundup® Products ............................................... 2

    B.    Plaintiff's Allegations ......................................................................... 5

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT ................................................................................................................. 7

I.    Plaintiff Lacks Article III Standing ............................................................... 7

    A.    Plaintiff Lacks Standing Because He Does Not Allege an Injury in Fact ............. 7

    B.    Plaintiff Lacks Standing for Injunctive Relief Because He Does Not Plausibly Allege that He Will Be Deceived Again ............................................. 10

II.    FIFRA Expressly Preempts Plaintiff's Claim ................................................ 11

    A.    Plaintiff's Claim Seeks to Impose a State-Law Labeling Requirement. .............. 12

    B.    Plaintiff's Claim Seeks to Impose a Requirement "In Addition to" and "Different from" FIFRA. ............................................... 13

III.    Plaintiff's Claim is Also Barred by Impossibility Preemption. ......................... 15

    A.    EPA Has Expressly Stated That It Will Not Approve the Very Warning Plaintiff Seeks. ............................................... 16

    B.    Plaintiff's Claim Is Barred by Impossibility Preemption Because Monsanto Cannot Independently Add the Warning Plaintiff Seeks. ................... 17

IV.    Plaintiff Does Not Plausibly Allege Any Facts that Could Constitute Unfair or Deceptive Conduct in Delaware. ................................................... 18

CONCLUSION ............................................................................................................. 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012)............................................................................................16

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005).................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................7

*Carias v. Monsanto Co.*,
2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ....................................................13

*In re Chemed Corp., S'holder Derivative Litig.*,
2019 WL 3215852 (D. Del. Feb. 26, 2019) ..........................................................3

*Chudner v. TransUnion Interactive, Inc.*,
2010 WL 11710658 (D. Del. Mar. 4, 2010) ........................................................19

*Cottrell v. Alcon Laboratories*,
874 F.3d 154 (3d Cir. 2017)................................................................................10

*Eames v. Nationwide Mut. Ins. Co.*,
2008 WL 4455743 (D. Del. Sept. 30, 2008), *aff'd*, 346 F. App'x 859 (3d Cir.
2009) ...............................................................................................................7, 19

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010)............................................................................13, 16

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016)...........................................................................7, 8, 9

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
751 F.3d 150 (3d Cir. 2014)...........................................................................17, 18

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)............................................................................................16

*Hanna v. Walmart Inc.*,
2020 WL 7345680 (C.D. Cal. Nov. 4, 2020).......................................................11

*Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*,
617 F.3d 207 (3d Cir. 2010)................................................................................12

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
   903 F.3d 278 (3d Cir. 2018) ........................................................................................ *passim*

*Marshall v. Priceline.com Inc.*,
   2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ........................................................19, 20

*McNair v. Synapse Group Inc.*,
   672 F.3d 213 (3d Cir. 2012) ..........................................................................................10

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ................................................................................................14, 15

*Merck Sharp & Dohme Corp. v. Albrecht*,
   139 S. Ct. 1668 (2019) ...................................................................................................16

*Monsanto Co. v. Hardeman*,
   No. 19-16636 (9th Cir.), Dkt. No. 32 ...........................................................................5, 13

*Mut. Pharm. Co. v. Bartlett*,
   570 U.S. 472 (2013) ................................................................................................16, 18

*Nathan Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) ......................................................................................17

*Nieves v. All Star Title, Inc.*,
   2010 WL 2977966 (Del. Super. Ct. July 27, 2010) .......................................................19

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) .........................................................................................3

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ................................................................................................17, 18

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008) .........................................................................................13, 14, 15

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) ........................................................................................7, 20

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...............................................................................................7, 10

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
   980 F.3d 879 (3d Cir. 2020) .........................................................................................8, 11

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ...........................................................................................3

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    901 A.2d 106 (Del. 2006) ...................................................................19

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ..........................................................................16

**Statutes**

7 U.S.C. § 136 ...................................................................................... *passim*

7 U.S.C. § 136a ...............................................................................2, 3, 14

7 U.S.C. § 136c ............................................................................................2

7 U.S.C. § 136j ...........................................................................3, 13, 14

7 U.S.C. § 136l ........................................................................................14

7 U.S.C. § 136v ................................................................................... *passim*

21 U.S.C. § 360k ....................................................................................14

Del. Code ann., tit. 6, § 2512 ................................................................18

**Other Authorities**

40 C.F.R. § 152.44 ...............................................................................3, 18

40 C.F.R. § 152.46 ...............................................................................3, 18

40 C.F.R. § 152.112 ...................................................................................2

40 C.F.R. § 156.10 .....................................................................................3

40 C.F.R. §§ 156.60-156.70 .......................................................................3

40 C.F.R. § 156.70 ..................................................................................18

40 C.F. R. § 156.212 ..................................................................................3

40 C.F.R. § 158.500 ...................................................................................2

62 Fed. Reg. 17,723 (1997) ........................................................................4

67 Fed. Reg. 60,934 (2002) ........................................................................4

69 Fed. Reg. 65,081 (2004) ........................................................................4

73 Fed. Reg. 73,586 (2008) ........................................................................4

78 Fed. Reg. 25,396 (May 1, 2013) .......................................................................4

85 Fed. Reg. 5,957 (2020) .....................................................................................4

EPA, Pesticide Registration Notice (PRN) 98-10: Notifications, Non-
    Notifications and Minor Formulation Amendments (Oct. 22, 1998) ....................18

Fed. R. Civ. P. 9(b) .........................................................................................7, 19

Fed. R. Civ. P. 12(b)(6).........................................................................................7

Fed. R. Evid. 201 ...................................................................................................3

U.S. Const. art. III..... ...................................................................................*passim*

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff alleges that Monsanto violated the Delaware Consumer Fraud Act ("DCFA") because it sold Roundup®-brand herbicide products without a warning that the products' primary active ingredient, glyphosate, is an alleged carcinogen—a warning that would be contrary to EPA's repeated scientific conclusions and the EPA-approved label. Plaintiff's First Amended Complaint should be dismissed in its entirety for four reasons.

***Plaintiff has not plausibly alleged facts showing that he has Article III standing.*** Plaintiff alleges in conclusory fashion that he paid a premium price for the Roundup® products due to the absence of a cancer warning, but pleads no facts "that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018). He also lacks standing to seek injunctive relief because he is "well aware" of the alleged "health risks associated with using" the products and thus cannot plausibly claim he will be deceived again in the future. *Id.* at 292.

***Plaintiff's claim is expressly preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")***, which bars any state-law "requirements for labeling or packaging in addition to or different from" its requirements. 7 U.S.C. § 136v(b). FIFRA requires that pesticides be sold without deviation from the EPA-approved label and requires that pesticides not be misbranded by including false or misleading statements. EPA has repeatedly determined that no cancer warning is warranted for Roundup® products and, in fact, has concluded that such a warning would be *false* and constitute illegal "misbranding." Plaintiff's DCFA claim would thus require a departure from the EPA-approved labeling and a warning that EPA has rejected, and it is therefore preempted by FIFRA.

***Plaintiff's claim is preempted under the doctrine of impossibility preemption.*** There is "clear evidence" that EPA would reject any bid to add a cancer warning to the Roundup® products' labeling. Plaintiff's theory would thus make it impossible for Monsanto to comply with both state and federal requirements and is therefore preempted.

***Plaintiff has not plausibly alleged any facts constituting unfair or deceptive conduct in Delaware as required to proceed under the DCFA.*** Plaintiff is a Washington resident who purchased the Roundup® products in Oregon. He fails to plausibly allege any relevant fraudulent conduct occurring in or originating from Delaware, and therefore cannot proceed under the DCFA.

## FACTUAL BACKGROUND

### A.    Glyphosate and the Roundup® Products

Glyphosate is the primary active ingredient in many of Monsanto's Roundup®-brand herbicide products, including the products Plaintiff allegedly bought. D.I. 14 ¶¶ 1, 16, 103. Under FIFRA, all pesticides (including herbicides) sold in the United States must be registered with EPA. 7 U.S.C. § 136a(a). EPA may not register a pesticide unless it finds that it will not cause unreasonable risks to human health or the environment when used as directed in the product labeling. 7 U.S.C. §§ 136a(c)(5)(C), 136(bb). EPA requires pesticide registrants to provide extensive scientific data, including field trial data on carcinogenicity, toxicity, and other human health risks (7 U.S.C. §§ 136a(c)(1)(F), (c)(2)(A), 136c(a); 40 C.F.R. § 158.500), which EPA substantively analyzes and exercises its expert judgment about before registering any pesticide (40 C.F.R. § 152.112(f)). FIFRA requires EPA to review a pesticide's registration, including its effects on human health, at least once every fifteen years, 7 U.S.C. § 136a(g).

As part of the initial registration and review processes, pesticide registrants must submit a complete copy of the labeling to EPA, which must determine that the labeling complies with FIFRA's requirements before registering the product. 7 U.S.C. § 136a(c)(1)(C), (c)(5)(B). Based

on its analysis, EPA may require a pesticide's labeling to feature "human hazard" warnings or "precautionary statements" about potential health risks and mitigation actions, 40 C.F.R. §§ 156.60-156.70; mandatory personal protective equipment, *id.* § 156.212; detailed application directions to protect human health and safety, *id.* § 156.10(i)(2); or designations for use by "general" or "certified applicators" based on possible health, safety, or other risks it identifies, 7 U.S.C. § 136a(d); 40 C.F.R. § 156.10(j). FIFRA prohibits labeling and packaging that is "misbranded," meaning that pesticide labels must (among other requirements) include all necessary warnings or cautionary statements and must not be "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A), (G); *id.* § 136a(c)(5)(B); 40 C.F.R. § 156.10(a)(5). It is unlawful for any person to distribute or sell the pesticide "if any claims made for it as part of its distribution or sale substantially differ" from its approved labeling. 7 U.S.C. § 136j(a)(1)(B). Registrants are also prohibited from adding a new "health hazard" to the label or changing the formulation of the pesticide without first obtaining EPA's approval. 40 C.F.R. §§ 152.44, 152.46. A state may "not impose or continue in effect any requirements for labeling or packaging in addition to or different from those" required by EPA under FIFRA. *Id.* § 136v(b).

Glyphosate has been registered with EPA since 1974. Declaration of Kelly E. Farnan ("Farnan Decl.")[1] Ex. A at 12. EPA has repeatedly evaluated the scientific evidence on human

---

[1] The exhibits to the Farnan Declaration are publicly available on EPA's website and are therefore subject to judicial notice under Federal Rule of Evidence 201 and may be considered by the Court without converting Monsanto's motion into a motion for summary judgment. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include … letter decisions of government agencies … and published reports of administrative bodies"); *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (judicial notice of "information [that] is publicly available on government websites"); *In re Chemed Corp., S'holder Derivative Litig.*, 2019 WL 3215852, at *3 n.6 (D. Del. Feb. 26, 2019) (judicial notice of "public documents that have been filed with the SEC").

health risks of glyphosate and concluded that glyphosate does not pose a risk of cancer in humans,

classifying glyphosate in EPA's lowest-risk category since at least 1991. *See id.* Exs. B at 14, A at

13. For example:

| Date | EPA Action |
|------|-----------|
| 1991 | EPA classified glyphosate as non-carcinogenic "based on a lack of convincing evidence of carcinogenicity in adequate studies." *Id.* Ex. B at 14. |
| 1993 | EPA concluded there was "evidence of non-carcinogenicity in humans." *Id.* Ex. B at viii, 14. |
| 1997 | EPA concluded that "[d]ata indicate that glyphosate is a group E carcinogen (evidence of noncarcinogenicity for studies in humans …)." 62 Fed. Reg. 17,723, 17,728 (1997). |
| 2002 | EPA found "[n]o evidence of carcinogenicity." 67 Fed. Reg. 60,934, 60,935-43 (2002); *see also* 69 Fed. Reg. 65,081, 65,086 (2004) ("Glyphosate has no carcinogenic potential"). |
| 2008 | EPA concluded in the Federal Register that "glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant." 73 Fed. Reg. 73,586, 73,589 (2008). |
| 2013 | EPA reiterated its conclusion that "glyphosate does not pose a cancer risk to humans." Final Rule: Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,398 (May 1, 2013). |
| 2015 | EPA reevaluated glyphosate and again classified it as "Not Likely to be Carcinogenic to Humans." Farnan Decl. Ex. A at 13, 143-44. |
| 2016 & 2017 | EPA concluded that "the available data and weight-of-evidence clearly do not support the descriptors 'carcinogenic to humans,' 'likely to be carcinogenic to humans,' or 'inadequate information to assess carcinogenic potential'" and that the scientific evidence provides "strongest support" for the descriptor "not likely to be carcinogenic to humans." *Id.* Exs. C at 137, 141, A at 143-44; *see id.* Ex. D at 15. |
| April 2019 | EPA concluded that it has "not identif[ied] any human health risks from exposure to and use of glyphosate." *Id.* Ex. E at 35. |
| August 2019 | EPA issued a letter to all registrants of glyphosate-based products stating that, based on its "extensive" review of scientific literature, "including studies submitted to support registration of glyphosate and studies identified by EPA in the open literature as part of a systematic review," glyphosate is "not likely to be carcinogenic to humans" and it would therefore be "false and misleading," and a violation of FIFRA's misbranding prohibition, to include a cancer warning on such products. *Id.* Ex. F at 1. |
| January 2020 | EPA issued its final Interim Registration Review Decision for glyphosate, following notice-and-comment procedure. EPA concluded that "there are no risks to human health from the current registered uses of glyphosate and that glyphosate is not likely to be carcinogenic to humans." *Id.* Ex. G at 10; *see also* 85 Fed. Reg. 5,957 (2020). Based on its findings, EPA once again required no modifications to the |

| Date | EPA Action |
|------|------------|
|  | labeling of glyphosate-containing products on the issue of carcinogenicity. *See id.* at 9-10, 15. |

In 2015, the International Agency for Research on Cancer ("IARC") classified glyphosate as "probably carcinogenic." D.I. 14 ¶¶ 30-32. EPA, however, "disagrees with IARC's assessment of glyphosate" and has explained that its "scientists have performed an independent evaluation of available data since the IARC classification … and concluded that glyphosate is 'not likely to be carcinogenic to humans.'" Farnan Decl. Ex. F at 1. EPA has informed registrants of glyphosate-based products that a cancer warning on those products would be "***false and misleading***" and thus render any product so labeled "***misbranded***" under FIFRA." *Id.* (emphases added); *see* D.I. 14 ¶ 75. Consequently, EPA has determined, glyphosate products including such a cancer warning "***do not meet the requirements of FIFRA***." *Id.* (emphasis added). EPA therefore has stated that it ***would not approve*** any labeling with a cancer warning.[2] Farnan Decl. Ex. F at 2.

**B.      Plaintiff's Allegations**

Plaintiff lives in Washington and alleges that he bought Roundup® products "on multiple occasions," including most recently in Oregon. D.I. 14 ¶¶ 13, 102-03. Plaintiff does not allege that he purchased Roundup® products in Delaware or that he ever lived in Delaware. He alleges that Monsanto is incorporated in Delaware (but maintains its principal place of business in Missouri), sells Roundup® products in Delaware, and that the alleged omissions "arose, in part, in Delaware."

---

[2] EPA reiterated this conclusion in a January 2020 amicus brief filed in the Ninth Circuit, noting that a cancer warning for glyphosate-based products would "warn[] of a cancer risk that, according to EPA's assessment, does not exist" and therefore "constitute[] prohibited misbranding." Brief of U.S. as Amicus Curiae in Supp. of Monsanto at 10, *Monsanto Co. v. Hardeman*, No. 19-16636 (9th Cir.), Dkt. No. 32 ("EPA *Hardeman* Br.").

*Id.* ¶¶ 11-12, 14, 18.

Plaintiff alleges that Monsanto violated the DCFA by marketing and selling Roundup®
Lawn & Garden products without disclosing on its product labels, its webpages, or in-store
advertisements the products' "potential to cause cancer." *Id.* ¶ 132-33; *see id.* ¶¶ 6-8. He alleges
that Monsanto "leads reasonable consumers into believing Roundup is safe for its intended use"
by omitting the alleged cancer risk and identifying on the product label only the risk of "moderate
eye irritation." *Id.* ¶¶ 26, 28-29.

Plaintiff acknowledges the repeated regulatory approvals of glyphosate and the Roundup®
products but asserts that those approvals were "based on an incomplete and distorted factual
record" because Monsanto concealed the risks associated with glyphosate from EPA. *See id.* ¶¶ 78-
92. He contends he was unaware that Roundup® products could cause cancer and would not have
purchased the products had he known the "truth." *See id.* ¶¶ 105, 137. When he learned the
supposed truth, Plaintiff "stopped using the Product." *Id.* ¶ 106.

Plaintiff claims to have suffered an "economic injury" in that he "paid a price premium for
the Product given Roundup's potential carcinogenicity was undisclosed." *Id.* ¶¶ 109-10. Plaintiff
nevertheless concedes that the product is "effective" and that he "*may* purchase Roundup again *if*
he believes Roundup has been reformulated to remove or mitigate its potential risks." *Id.* ¶¶ 107,
139 (emphases added). Plaintiff does not allege that he has suffered any personal injury. He instead
purports to sue on behalf of a nationwide class, and seeks actual damages and an injunction
"requiring Defendant to notify consumers of Roundup's potential to cause cancer" or the
"existence of a scientific dispute" regarding the same and "[e]njoining Defendant from continuing
the allegedly unlawful conduct. *Id.* ¶¶ 112, 141-143, Prayer for Relief.

6

## LEGAL STANDARD

Courts should grant Rule 12(b)(6) motions when the plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). The "heightened pleading requirements [of Rule 9(b)] apply to claims arising under the [DCFA]." *Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008), *aff'd*, 346 F. App'x 859 (3d Cir. 2009).

On a motion to dismiss, courts assess Article III standing using the same standard as a motion to dismiss for failure to state a claim. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016). To establish standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Johnson & Johnson*, 903 F.3d at 284 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Courts must dismiss a putative class action if the named plaintiff lacks standing. *Finkelman*, 810 F.3d at 195. Courts assume the veracity of non-conclusory allegations and determine whether they "plausibly establish the prerequisites of standing." *Id.* at 194.

## ARGUMENT

## I.    PLAINTIFF LACKS ARTICLE III STANDING.

### A.    Plaintiff Lacks Standing Because He Does Not Allege an Injury in Fact.

A plaintiff seeking damages for economic injury "must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture." *Id.* at 285. The complaint need not plead the "exact value" of the economic injury, but it must include "sufficient factual allegations that, if proven true," would establish the

alleged economic injury. *Id.* at 287. Allegations "that require[] speculation about market or firm-level effects" are insufficient to establish Article III standing. *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 887 (3d Cir. 2020).

Based on these principles, the Third Circuit has repeatedly held that a plaintiff lacks standing when, like Plaintiff here, her theory of injury depends on speculative allegations of a "price premium." In *Finkelman*, for example, the plaintiff pleaded a "price inflation" theory of injury, alleging that, because the NFL reserved nearly all Super Bowl tickets for NFL teams and "league insiders," he was forced to pay a premium over face value when he purchased two Super Bowl tickets on the resale market. 810 F.3d at 190-91, 199. The Third Circuit rejected this theory as resting "on nothing more than supposition" because there was "no way of knowing whether the NFL's withholding of tickets would have had the effect of increasing or decreasing prices on the secondary market." *Id.* at 200-01. It was plausible that the NFL's conduct could have "*increased* the supply of tickets on the resale market, leading to *lower* prices." *Id.* at 200 (emphases in original). The "bald assertion" that he "paid more for his tickets than he would have absent the NFL's alleged misconduct" was not enough when "no facts supporting [his] theory of injury appear[ed] within the four corners of the complaint." *Id.* at 202; *see also Thorne*, 980 F.3d at 886-87 (upholding dismissal of complaint because theory that tires were priced higher because of dealer's failure to help purchaser register tires relied on "speculation about market or firm-level effects").

Like the price inflation theory in *Finkelman*, Plaintiff's "price premium" theory of injury[3] relies on a "bald assertion" unsupported by any facts in the amended complaint and does not satisfy

---

[3] Plaintiff relied on a "benefit of the bargain" theory of injury in his initial complaint, (*see* D.I. 1 ¶¶ 105, 137), but after Monsanto moved to dismiss, amended his complaint to allege that he paid a price premium (*see* D.I. 11 at 7-10; D.I. 14 14 ¶¶ 109-10). To the extent that Plaintiff argues that

the requirements of Article III standing. Plaintiff alleges that Monsanto "implicitly advertised Roundup as safe, and thus 'superior' to other weed and grass killers on the market," and that he and other putative class members therefore "paid a price premium for the Product." D.I. 14 ¶ 109; *see id.* ¶ 110 ("[B]ut for Defendant's omissions, the actual price Plaintiff and Class Members paid would have and should have been less."). But, as in *Finkelman*, Plaintiff pleads no facts to support his theory that the price of Roundup® products would have been lower had Monsanto disclosed the products' supposed health risks. He would instead have the Court "look[] only to the [unquantified] difference between" the price of Roundup® products and "other weed and grass killers on the market," and rely on a "suspicion" that Roundup® products "would have been cheaper" if they included a cancer warning. *Finkelman*, 810 F.3d at 201. Such "speculation is not enough to sustain Article III standing." *Id.* at 200.

In fact, the complaint undermines Plaintiff's theory of injury because it demonstrates that there has been significant public discussion of the products' alleged health risks. *Johnson & Johnson* is illustrative. There, the plaintiff alleged that the defendant improperly marketed its baby powder by failing to disclose that it increased the risk of ovarian cancer. 903 F.3d at 282. The Third Circuit held that plaintiff lacked standing because his theory that the defendant was "able to sell the [baby powder] product for more than it otherwise would have had it properly informed

---

the FAC still alleges a "benefit of the bargain" theory of injury, that theory is foreclosed by *Johnson & Johnson*. The plaintiff there alleged that she received an "unsafe" product worth less than the "safe" product for which she bargained, but did not claim to have suffered any physical injury. 903 F.3d at 282-83. The court rejected that theory because the plaintiff did not plausibly allege that she developed or was at an increased risk of developing cancer or that "the economic benefit she received from that powder was *anything* less than the price she paid." *Id.* at 289-90. The same is true here. Plaintiff does not allege any facts to support his conclusory assertion that he would have paid less for an "unsafe" weed and grass killer or claim to have suffered any physical injury or increased risk of harm, conceding that the Roundup® products were *effective* and that he may purchase them again in the future. D.I. 14. ¶¶ 107, 139. As in *Johnson & Johnson*, Plaintiff *has* received the benefit of his bargain.

consumers about the safety risks" was "nothing more than mere conjecture." *Id.* at 291-92. The court explained that, because the complaint demonstrated that the allegations were widely available to consumers, such "widespread knowledge [may] already have been factored into the current market price of" the defendant's products. *Id.* at 291 n.18.[4]

Plaintiff's amended complaint suffers from the same fatal flaws as *Johnson & Johnson*. Plaintiff cites "numerous publicly available studies and publications," from "[a]s early as the 1980's," regarding the alleged risks of glyphosate and the Roundup® products. *Id.*; D.I. 14 ¶ 35; *see id.* ¶¶ 30-75; *see Johnson & Johnson*, 903 F.3d at 291 n.18. These allegations suggest that the alleged safety risks may already be factored into the Roundup® products' current market price. *Id.* Because his theory of injury "runs headlong into [Third Circuit] case law," Plaintiff's claim should be dismissed for lack of Article III standing. *Id.* at 886.

### B. Plaintiff Lacks Standing for Injunctive Relief Because He Does Not Plausibly Allege that He Will Be Deceived Again.

A plaintiff seeking injunctive relief "must establish that he is 'likely to suffer future injury from the defendant's conduct.'" *Johnson & Johnson*, 903 F.3d at 292 (quoting *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)). The risk of future harm must be "actual or imminent, not conjectural or hypothetical." *Id*. at 284 (quoting *Spokeo*, 136 S. Ct. at 1548).

*Johnson & Johnson* held that the plaintiff lacked standing to seek an injunction for

---

[4] The court in *Johnson & Johnson* distinguished *Cottrell v. Alcon Laboratories*, 874 F.3d 154 (3d Cir. 2017), which held that plaintiffs who alleged they had bought medication packaged in a way that forced them to waste a portion of the product had alleged injury in fact. *Id.* at 167-68. The plaintiffs in *Cottrell* "had standing *only because* they were *unable* to use a portion of the [product] they had purchased, and they alleged an economic theory that allowed them to value that unused portion." *Johnson & Johnson*, 903 F.3d at 287 (emphases added). As in *Johnson & Johnson*, Plaintiff's theory of economic injury depends entirely on conjectural assertions about portions of Roundup® products that he actually used or could have used. *See id.* at 287-88 & n.11; *see* D.I. 14 ¶¶ 109-10.

"corrective advertising" or to enjoin the defendant from "continuing [its] unlawful practices" because she was "well aware of the health risks associated with using" the product at issue. *Id.* at 292. Likewise, in *Thorne*, the court held that the plaintiff's "request for injunctive relief amount[ed] to a 'stop me before I buy again claim' that precludes Article III standing" where her allegations also revealed she was aware of the allegedly unlawful conduct. 980 F.3d at 896. The court refused to assume that the plaintiff would "act in such a way that she will again suffer the same alleged 'injury.'" *Id.* (quoting *Johnson & Johnson*, 903 F.3d at 293).

The injunctive relief Plaintiff seeks is like that sought in *Johnson & Johnson* and *Thorne*. *E.g.*, D.I. 14 ¶ 141 (seeking "order requiring Defendant to notify consumers of Roundup's potential to cause cancer"). Plaintiff is surely aware of the alleged health risks outlined in his own complaint. The idea that he is likely to be deceived again is incredible. Plaintiff does not allege that he *will* buy the products again, but only that he "*may* purchase Roundup again *if* he believes it has been reformulated to remove or mitigate its potential risks." *Id.* ¶ 139 (emphases added). This is the very definition of a conjectural or hypothetical injury, and Plaintiff's claim should be dismissed. *Hanna v. Walmart Inc.*, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020) (dismissing nearly identical claim against retailer of Roundup® products).

## II.   FIFRA EXPRESSLY PREEMPTS PLAINTIFF'S CLAIM.

Plaintiff's claim is preempted by FIFRA, because EPA has repeatedly assessed glyphosate, the Roundup® products, and their labeling, and concluded that a cancer warning is neither required nor permitted by FIFRA.

FIFRA includes an express preemption provision prohibiting states from "impos[ing] … any requirements for labeling or packaging in addition to or different from those required under this Act." 7 U.S.C. § 136v(b). Applying this provision, the Supreme Court has held state-law requirements "for labeling or packaging" that impose duties "in addition to or different from those

required" under FIFRA are expressly preempted by FIFRA. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 438-44 (2005). Plaintiff's DCFA claim is expressly preempted because it is a state-law "requirement[] for labeling or packaging" that is "in addition to or different from" FIFRA's requirements.

### A.      Plaintiff's Claim Seeks to Impose a State-Law Labeling Requirement.

Plaintiff's claim seeks to impose a state-law labeling requirement. A state-law duty constitutes a "requirement for labeling or packaging" under FIFRA if it "set[s] a standard for a product's labeling that [defendant's] label is alleged to have violated by containing false statements and inadequate warnings." *Id.* at 446. That describes Plaintiff's claim here. Plaintiff alleges that the warnings on the product labels are inadequate and "give[] the false impression eye irritation is the only risk posed by Roundup, when in fact, Roundup has the potential to cause cancer." D.I. 14 ¶ 29. He alleges that consumers are entitled to a state-law remedy because Monsanto failed to disclose the alleged carcinogenicity of glyphosate, or the "debate" regarding the same, "on the Roundup label," or "through other means of disclosure" such as product webpages and in-store advertisements.[5] *Id.* ¶ 133; *see also, e.g.*, *id.* ¶¶ 8, 18, 104, 132. Plaintiff's theory is thus that the products' EPA-approved labeling is inadequate for failing to include a cancer warning, and that Monsanto is required by state law to provide a warning not included on that labeling.

Plaintiff seeks both an injunction and monetary relief, either of which would impose a state-law "requirement for labeling or packaging." *Bates*, 544 U.S. at 447 (damages claims for

---

[5] If Plaintiff asserts his claim cannot be preempted to the extent that it relies on such "other means of disclosure," he is mistaken. "Labeling" includes not just the labels attached to the product itself, but any "written, printed, or graphic matter … accompanying the pesticide [] at any time." 7 U.S.C. § 136(p)(1). "Accompanying" refers not to physical proximity, but to the relationship of the written or graphic matter to the label, and whether it can be "read as providing a supplement to the [] label." *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 218 (3d Cir. 2010).

fraud and failure to warn were "premised on common-law rules that qualify as 'requirements for labeling or packaging.'"); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("requirement" includes common-law claims, even when the "remedy is limited to damages"); *Farina v. Nokia Inc*., 625 F.3d 97, 133 (3d Cir. 2010) ("[I]t is the cause of action, and not the specific relief requested, that matters.").[6] Nor does Plaintiff's transparent attempt to avoid preemption by pleading that the injunctive relief he seeks is not a "label change," but rather the disclosure of the alleged risk to consumers through other means, change the analysis. D.I. 14 ¶¶ 67, 141. Plaintiff's claim would impose liability for the omission of a cancer warning premised on the alleged inadequacy of the product labeling and thus seeks to impose a requirement for labeling under state law.

### B.   Plaintiff's Claim Seeks to Impose a Requirement "In Addition to" and "Different from" FIFRA.

Plaintiff's claim would impose a state-law "requirement for labeling" that is "in addition to or different from" federal requirements imposed under FIFRA. *See* 7 U.S.C. § 136v(b).

EPA's approval of a pesticide's label has substantive legal effect and compels manufacturers, distributors, and retailers to sell and distribute the product with the EPA-approved label warnings. *See* 7 U.S.C. § 136j(a)(1)(E); *see also* EPA *Hardeman* Br. at 20-21 ("The EPA approved label is a very formal affair that is the foundation of any FIFRA preemption argument, and that label … establishes 'requirements' sufficient to support a preemption analysis."). Specifically, FIFRA makes it "unlawful for any person" to "distribute or sell … any pesticide which is adulterated or misbranded." 7 U.S.C. § 136j(a)(1)(E); *see also id.* § 136j(a)(1)(B) (making

---

[6] Although some courts have concluded that claims for damages cannot impose labeling "requirements"—*e.g.*, *Carias v. Monsanto Co.*, 2016 WL 6803780, at *7 (E.D.N.Y. Sept. 30, 2016)—those decisions cannot be reconciled with *Bates* or the Third Circuit's decision in *Farina*.

it unlawful to distribute or sell pesticide "if any claims made for it as part of its distribution or sale substantially differ" from its approved labeling). "A pesticide is misbranded if its labeling bears any statement … which is false or misleading in any particular." *Id.* § 136(q)(1)(A). Any misbranding can lead to criminal and civil penalties. *See* 7 U.S.C. § 136l(a)-(b). Accordingly, any "state-law labeling requirement" that differs from what FIFRA requires cannot "survive preemption." *Bates*, 544 U.S. at 453.[7]

EPA has repeatedly approved labels for the Roundup® products with no cancer warning. *See supra* at 2-4. Those approvals are based on decades of findings that glyphosate poses no cancer risk to humans and that no cancer warning is appropriate. *See id.* Under the misbranding provision of § 136j(a), use of the EPA-approved label for glyphosate products, containing no cancer warning, is a federal requirement specific to these products that brooks no deviation. EPA underscored that requirement in its August 2019 letter to registrants of glyphosate products notifying them that it would *not* approve such a warning because it would be "false and misleading" and render the product "misbranded." *See supra* at 2-4; Farnan Decl. Ex. F at 1. A state-law requirement to provide a warning that deviates from the EPA-approved label in connection with the sale of Roundup® products—a warning that EPA has made clear it would not allow—is surely "in addition to" and "different from" the labeling requirement imposed by EPA under FIFRA.[8]

---

[7] In *Bates*, it was unclear whether the asserted state-law labeling requirements differed from those established by EPA because the label statements at issue did not concern health or safety, but the product's efficacy. EPA had waived review of efficacy issues under FIFRA under 7 U.S.C. § 136a(c)(5). 544 U.S. at 440, 450. The Court thus recognized the asserted state-law claims might permissibly reinforce the same substantive misbranding requirement included in FIFRA, and remanded for consideration of this issue. *See id.* at 447, 453. Here, in contrast, EPA has addressed the precise labeling question Plaintiff raises, substantively reviewed the scientific evidence, concluded the products do not pose a risk of cancer or other human health risks, and required the use of a label with no cancer warning. *See supra* at 2-4.

[8] This conclusion is further confirmed by the Supreme Court's holdings in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), which concerned a

14

Indeed, *Bates* confirms that EPA's misbranding determination expressly preempts Plaintiff's claim. There, the Court explained that "a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." 544 U.S. at 447. By contrast, if state law requires a pesticide's label to say "DANGER" where EPA decides it should include "the more subdued 'CAUTION,'" the state-law requirement "would be pre-empted." *Id.* at 453. Here, the difference between the state- and federal-law requirements is not just a matter of degree like "DANGER" and "CAUTION"; the requirements are directly opposed, with Plaintiff alleging that state law requires a cancer warning and federal law prohibiting such a warning. Far from being "fully consistent with FIFRA's misbranding provisions," the state-law requirement Plaintiff alleges here would cause Monsanto to violate FIFRA's misbranding provisions, as EPA has specifically confirmed. *See* Farnan Decl. Ex. F at 1. A registrant cannot be held liable under state law for failing to mislabel its pesticide in violation of FIFRA. Plaintiff's claim is expressly preempted by § 136v(b).

## III.   PLAINTIFF'S CLAIM IS ALSO BARRED BY IMPOSSIBILITY PREEMPTION.

Plaintiff's claim is also barred under the doctrine of impossibility preemption, which preempts state law "where it is 'impossible for a private party to comply with both state and federal

---

preemption provision in the Medical Device Amendments of 1976, 21 U.S.C. § 360k, that (as *Bates* noted) is identical in relevant part to FIFRA's express preemption provision. In *Lohr*, FDA had approved the medical device for sale, but it had never undergone premarket approval for safety and efficacy. Because FDA had established no "requirements" for safety and efficacy, the plaintiff's tort claims were not preempted. *See* 518 U.S. at 492-502. In *Riegel*, by contrast, FDA had approved the safety and efficacy of the device at issue, and the manufacturer could make "almost no deviations" without FDA's further approval. 552 U.S. at 319. The Court held that this approval imposed federal "requirements" specific to the device, and any additional or different state-law tort requirements were expressly preempted. *Id.* at 322-23. Here, as in *Riegel*, EPA has established federal "requirements" for the Roundup® products' labeling. And, as in *Riegel*, EPA's approval triggers specific and mandatory federal labeling requirements that preempt any additional or different state-law requirements.

requirements.'"[9] *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 473 (2013); *Farina*, 625 F.3d at 122.

### A.    EPA Has Expressly Stated That It Will Not Approve the Very Warning Plaintiff Seeks.

Plaintiff's claim is barred because EPA would exercise its lawfully delegated authority to reject any attempt to add a cancer warning to the Roundup® products' labeling. Federal law preempts state warning and design claims if there is "clear evidence" the federal agency would not approve the warning purportedly required by state law. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672-78 (2019); *Wyeth v. Levine*, 555 U.S. 555, 568, 571-72 (2009). Clear evidence exists when the regulator (1) was "fully informed" of the "justifications for the warning," and (2) communicated its rejection of that risk through agency action "carrying the force of law." *Albrecht*, 139 S. Ct. at 1678-79. Both prongs of the "clear evidence" test are met here.

*First*, EPA was "fully informed" about the supposed evidence that glyphosate is carcinogenic. As explained in the background section above, the agency has repeatedly undertaken in-depth scientific reviews of the evidence on glyphosate's safety, and repeatedly concluded that it is safe and non-carcinogenic. *Supra* at 2-4. These determinations were based on extensive review of scientific evidence, including an open literature review, and the most recent determinations came *after* all of the supposed "evidence" of glyphosate's carcinogenicity cited in the complaint. Farnan Decl. Ex. F at 1. In fact, EPA explained in its August 2019 letter that "EPA scientists have performed an independent evaluation of available data," and that it "considered a more extensive dataset than IARC." *Id.* Additionally, EPA's determinations followed a lengthy opportunity for

---

[9] "[T]he existence of an 'express preemption provision does *not* bar'" or weaken the impossibility preemption doctrine. *Arizona v. United States*, 567 U.S. 387, 406 (2012) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869-72 (2000)); *Farina*, 625 F.3d at 130.

public comment. *Id.* Exs. E at 6-7, G at 4-5. It is beyond question that EPA is "fully informed."[10]

*Second*, EPA's consistent findings that glyphosate poses no cancer risk to humans, and that no cancer warning is warranted, constitute clear evidence that the agency would not have approved a request to add a cancer warning. To that end, EPA's August 2019 letter *expressly* informed registrants that it would not approve such a warning. *Id.* Ex. F at 1. And its January 2020 Interim Registration Review Decision, issued after notice and comment, reiterated that "glyphosate is not likely to be carcinogenic to humans." *Id.* Ex. G at 10. These documents confirm what has been true for decades: EPA does not believe glyphosate is a carcinogen, views a cancer warning as false and misleading, and "would not approve a change to the [product's] label to include" a cancer warning. *Id.* Ex. F at 1.

### B.  Plaintiff's Claim Is Barred by Impossibility Preemption Because Monsanto Cannot Independently Add the Warning Plaintiff Seeks.

Separate from the "clear evidence" test, impossibility preemption also bars Plaintiff's claim because Monsanto cannot unilaterally change its products' formulations or add a cancer warning to the label without EPA approval. Impossibility preemption applies when a defendant cannot "independently do under federal law what state law requires of it." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011); *see also In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 162 (3d Cir. 2014). *Mensing* held that state-law failure-to-warn claims against generic drug makers were barred because federal law requires generic drug labels to be identical to corresponding branded drug labels. 564 U.S. at 615-18. Thus, if the defendants "had independently changed their labels to satisfy their state-law duty, they would have violated federal

---

[10] Plaintiff alleges that EPA's repeated registrations of glyphosate were "based on an incomplete and distorted factual record" because Monsanto sought "to conceal glyphosate's risks." D.I. 14 ¶¶ 78, 78-92. But such "fraud-on-EPA" claims are preempted by FIFRA. *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002).

law." *Id.* at 618. Similarly, in *Bartlett*, the plaintiff's design-defect claim against a generic drug maker was preempted because it would have required the defendant to "change [the drug's] labeling to provide stronger warnings," and thus "*not* to comply with federal law." *Bartlett*, 570 U.S. at 475.

Just as the drug makers in *Mensing* and *Bartlett* were barred from independently changing their labels, Monsanto cannot provide the warning Plaintiff demands without EPA approval. EPA approval is required for "any modification in the composition, labeling, or packaging of a registered product." 40 C.F.R. § 152.44(a). Minor clerical modifications can be made without prior EPA approval. *See* 40 C.F.R. §§ 152.44(b)(3); 152.16(a), (b). But any cancer warning would have to be in the "precautionary statements" section of the label. *See* 40 C.F.R. § 156.70(a). And a registrant cannot add a new health hazard to the "precautionary statement" of the label without EPA approval. *See* 40 C.F.R. §§ 152.44, 152.46; EPA, Pesticide Registration Notice (PRN) 98-10: Notifications, Non-Notifications and Minor Formulation Amendments (Oct. 22, 1998) at 8-9. Because Monsanto could not add the warning Plaintiff asserts the DCFA requires "without first obtaining the approval of a federal regulatory agency,"[11] Plaintiff's claim is impliedly preempted.

## IV.   PLAINTIFF DOES NOT PLAUSIBLY ALLEGE ANY FACTS THAT COULD CONSTITUTE UNFAIR OR DECEPTIVE CONDUCT IN DELAWARE.

Plaintiff—a Washington resident who bought Roundup® products in Oregon—does not plausibly allege any unfair or deceptive conduct within Delaware. The DCFA is limited to "practices in the conduct of any trade or commerce *in part or wholly within this State*." Del. Code ann., tit. 6, § 2512 (emphasis added). The Delaware Supreme Court has therefore held that a DCFA

---

[11] It is no answer to say that Monsanto could simply stop selling the Roundup® products altogether. The Supreme Court has rejected this type of "stop-selling rationale." *Bartlett*, 570 U.S. at 475; *Fosamax*, 751 F.3d at 164 ("*Bartlett* categorically rejected [the stop-selling] theory").

complaint must be dismissed if the plaintiff fails to "allege that any of the conduct at issue took place in Delaware." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006); *see Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) ("[C]ourts have consistently ruled that the DCFA is only applicable if the fraudulent conduct occurs within Delaware").

A defendant's incorporation or conduct of business in Delaware is insufficient to establish DCFA standing. *E.g.*, *Chudner v. TransUnion Interactive, Inc.*, 2010 WL 11710658, at *1 n.1 (D. Del. Mar. 4, 2010); *Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *5 (Del. Super. Ct. July 27, 2010) ("[T]he Court must focus on the location of the transaction and the defendant's conduct."). Instead, a plaintiff must allege specific fraudulent conduct between the plaintiff and the defendant within or originating from the state. *See, e.g.*, *Chudner*, 2010 WL 11710658, at *1 n.1 (dismissing non-resident's claim because "internet transaction at issue … ha[d] no connection to Delaware," despite Delaware incorporation); *Marshall*, 2006 WL 3175318, at *2 n.11 (dismissing non-residents' claims for failure to allege "that any specific act between the named Plaintiffs and the Defendant took place in Delaware," even though some class members accessed defendant's website from within state or used it to book in-state hotels). A plaintiff must plead such allegations with particularity. *See Marshall*, 2006 WL 3175318, at *2 n.11; *Eames*, 2008 WL 4455743, at *13 (Rule 9(b) applies to DCFA claims).

Plaintiff's amended complaint fails to plausibly allege any facts that would link the alleged omissions to conduct by Monsanto in Delaware. As in *Chudner*, Plaintiff does not claim to be a Delaware resident or that he bought the Roundup® products in Delaware. 2010 WL 11710658, at *1 n.1. To the contrary, Plaintiff concedes he is a Washington resident, did not reside in Delaware at any relevant time, and purchased the products in Oregon. D.I. 14 ¶¶ 13, 102-03. Plaintiff does

not contend that any of the alleged omissions on the product label, Monsanto's webpages, or in in-store advertisements on which *his* claim is based were made in Delaware. As in *Marshall*, Plaintiff's complaint fails to "assert that any specific act *between the named Plaintiffs and the Defendant* took place in Delaware." 2006 WL 3175318, at *2 n.11 (emphasis added).

Plaintiff tries to avoid this problem with artful pleading, alleging that (1) Roundup® products are, as a general matter, sold in Delaware; (2) Monsanto submits to Delaware's "law and forums with respect to Roundup," presumably through agreements with parties other than Plaintiff; and (3) the alleged omissions "arose, in part, in Delaware." D.I. 14 ¶¶ 11-12, 14, 15, 17-18, 20. But, for the reasons described above, allegations that Roundup® products are sold in Delaware and that the state's law governs certain agreements to which Plaintiff is not a party have no bearing on the allegedly fraudulent conduct *directed toward Plaintiff*.

Moreover, Plaintiff's allegations that the allegedly fraudulent conduct "arose" or "originate[d]," in part, in Delaware (D.I. 14 ¶¶ 12, 18) are conclusory and implausible and therefore must be disregarded. *Santiago*, 629 F.3d at 128, 130. Plaintiff alleges no specific facts from which a reasonable inference could be drawn that Monsanto developed any of the product labels, webpages, or in-store advertisements in Delaware. To the contrary, Plaintiff alleges that Monsanto's "principal place of business [is] in St. Louis, Missouri." D.I. 14 ¶ 14. As in *Marshall*, Plaintiff's only "assertion with respect to specific contact with Delaware is that [Monsanto] is incorporated within the state." 2006 WL 3175318, at *2 n.11; *see* D.I. 14 ¶ 14. That is insufficient to survive a motion to dismiss. *Id.* at *2 n.11.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's First Amended Complaint with prejudice.

20

OF COUNSEL:

**WINSTON & STRAWN LLP**
JOHN J. ROSENTHAL
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jrosenthal@winston.com

**WINSTON & STRAWN LLP**
JEFF WILKERSON
300 S. Tryon Street, Suite 1600
Charlotte, NC 28202
Tel: (704) 350-7714
Fax: (704) 350-7800
jwilkerson@winston.com


Dated:  January 26, 2021

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Monsanto Company*