**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SCOTT GILMORE *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1085-MN |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF THE
<u>CLASS FOR THE PURPOSES OF SETTLEMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTS ................................................................................................................................... 2

    A. Background and Procedural History ........................................................................... 2

        1.    Allegations in the Actions ................................................................... 3

        2.    The *Ezcurra* Action ............................................................................ 4

        3.    The Related Actions ............................................................................ 6

        4.    This Action ......................................................................................... 7

        5.    Mediation and Settlement Negotiations ............................................ 10

        6.    The *Tomlinson* Action ...................................................................... 12

    B. The Key Terms of the Settlement ............................................................................. 13

        1.    The Settlement Class ......................................................................... 13

        2.    Relief to the Class Members .............................................................. 14

            a.    Monetary Relief: Up to $45 Million Cash Consideration ...........................14

            b.    Class Notice and Administration Costs ...........................................14

            c.    Service Awards and Attorneys' Fees and Costs ..........................15

            d.    Payment of Class Members' Claims ...............................................16

        3.    The Release ........................................................................................ 17

        4.    Procedures for Opting Out or Objecting ........................................... 17

LEGAL STANDARDS .......................................................................................................... 18

ARGUMENT ......................................................................................................................... 19

I.     THE NATIONWIDE SETTLEMENT CLASS SHOULD BE CERTIFIED ...................... 19

    A. The Numerosity Requirement of Rule 23(a)(1) Is Satisfied ......................................... 19

    B. The Commonality Requirement of Rule 23(a)(2) Is Satisfied....................................... 19

    C. The Typicality Requirement of Rule 23(a)(3) Is Satisfied............................................ 20

    D. The Adequacy Requirement of Rule 23(a)(4) Is Satisfied............................................ 20

    E. Class Certification Is Appropriate Under Rule 23(b) .................................................. 22

        1.    Common Questions of Law and Fact Predominate ............................... 22

        2.    Settlement Is the Superior Method for Resolving This Controversy.................. 23

II.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................. 24

    A. The Settlement Is Entitled to a Presumption of Fairness.............................................. 24

    B. The Settlement Is Fair, Reasonable, and Adequate...................................................... 26

        1.    The Relevant *Girsh* Factors Support Approval of the Settlement ...................... 28

a.    The Complexity, Expense, and Likely Duration of the Litigation ................ 28

b.    The Reaction of the Potential Class Members to the Settlement ................. 29

c.    The Stage of the Proceedings and the Amount of Discovery Completed ...... 29

d.    The Risks of Establishing Liability and Damages ........................................ 30

e.    The Risks of Maintaining Class Action Status Through Trial ...................... 32

f.    The Ability of Defendants to Withstand a Greater Judgment ........................... 33

g.    The Range of Reasonableness of the Settlement Fund in Light of the Best-Possible Recovery and in Light of All the Attendant Risks of Litigation ...... 34

2.    The *Prudential* and Direct Benefit (*Baby Products*) Considerations Favor Approval ............................................................................................................... 34

a.    The maturity of the underlying substantive issues and related factors bearing on the probable outcome of a trial favors approval ....................................... 35

b.    Class Members have the right to opt-out of the Settlements ........................ 36

c.    The procedure for processing individual claims under the Settlements is fair and reasonable ............................................................................................... 36

d.    The Degree of Direct Benefit Provided to the Class ...................................... 38

III.   THE NOTICES AND NOTICE PLAN SHOULD BE APPROVED ................................ 38

CONCLUSION ............................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012) *aff'd*, 559 F. App'x 151 (3d Cir.
  2014) ...................................................................................................................................5

*In re Am. Investors Life Ins. Co. Annuity Marketing and Sales Practices Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009).........................................................................................24

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................................22

*In re Baby Prod. Antitrust Litig.*,
  708 F. 3d 163 (3d Cir. 2013)........................................................................................ *passim*

*Beneli v. BCA Fin. Servs., Inc.*,
  324 F.R.D. 89 (D.N.J. 2018)...............................................................................................23

*Biddle v. Lowe's Home Centers LLC*,
  No. 50-2019-CC-011405 (filed Aug. 27, 2019) ..................................................................6

*Boyette et al v. Lowe's Companies, Inc.*,
  No. 4:19-cv-04119 (W.D. Ark.) (filed Sept. 13, 2019) ........................................................7

*In re Budeprion XL Mktg. & Sales Litig.*,
  2012 WL 2527021 (E.D. Pa. July 2, 2012)........................................................................25

*Carson v. Monsanto*,
  4:17-cv-237 (S.D. Ga.), Dkt. 49.........................................................................................31

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir.2001).........................................................................................29, 30

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
  2019 WL 4645331 (E.D. Pa. Sept. 24, 20019) ..................................................................28

*In Re Comcast*,
  2018 WL 4252463 ...............................................................................................................38

*Cupit v. Dry Basement, Inc.*,
  592 S.W.3d 417 (Mo. Ct. App. 2020).................................................................................13

*Ezcurra et al v. Monsanto Co.*,
  No. 9:20-cv-80524 (S.D. Fla.) (filed 2/19/2020) ......................................................... *passim*

iii

*Ezcurra v. Monsanto*
  (11th Cir. Jan. 28, 2021) ....................................................................................31

*Ezcurra v. Monsanto Co.*,
  2020 WL 5491428 (S.D. Fla. Aug. 7, 2020)........................................................6

*Ezcurra v. Monsanto Co.*,
  Case No. 9:20-cv-80524-DMM (S.D. Fla.) ................................................4, 5, 10

*Fagundes v. The Home Depot*,
  No. 0:20-cv-61035 (S.D. Fla.) (filed Mar. 21, 2020)............................................7

*Fitzgerald v. Gann Law Books*,
  2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 7, 2014)........................................38

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir.1995)..................................................................21, 24, 28, 32

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)..................................................................... *passim*

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019)..............................................................27, 34, 35, 38

*Gregorio et al v. Home Depot U.S.A., Inc.*,
  No. CACE-21-002428 (filed Feb. 4, 2021) ..........................................................7

*Hanna et al v. Walmart, Inc.*,
  CIV SB 2100789 (Sup. Ct. Cal. for San Bernardino) (filed Jan. 12, 2021)
  (*Hanna II*) ...........................................................................................................7

*Hanna et al v. Walmart Inc.*,
  No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) (*Hanna I*) ...........................7

*Hardeman v. Monsanto*
  (May 14, 2021) (Nos. 19-16636, 19-16708)........................................................31

*Henderson v. Volvo Cars of N. Am., LLC*,
  2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013)........................................37

*Jewell et al v. Walmart, Inc.*,
  No. 4:19-cv-04088 (W.D. Ark.) (filed Aug. 12, 2019)..........................................7

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab.
  Litig.*,
  903 F.3d 278 (3d Cir. 2018)..............................................................................8, 9

iv

*Jones v. Monsanto Co.*,
   2021 U.S. Dist. LEXIS 91260 (W.D. Mo. May 13, 2021) ....................................................15

*Krell v. Prudential Ins. Co. of Am.* (*In re Prudential*),
   148 F.3d 283 (3d Cir. 1998).............................................................................................2, 27, 28

*Lamerson v. Walmart Stores, Inc.*,
   No. 50-2019-CC-009139 (filed July 15, 2019)........................................................................6

*Lupian v. Joseph Cory Holdings*,
   2019 WL 3283044 (D.N.J. July 22, 2019).............................................................................18

*Morley v. Ace Hardware Corp.*,
   No. CONO-19-010648 (filed Sept. 6, 2019)............................................................................7

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)............................................. *passim*

*Nyby v. Convergent Outsourcing, Inc.*,
   2017 WL 3315264 (D.N.J. Aug. 3, 2017) ..............................................................................24

*In re: Processed Egg Prod. Antitrust Litig.*,
   2016 WL 3584632 (E.D. Pa. June 30, 2016) ..........................................................................22

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir.2013)......................................................................................................19

*Shelly v. Target Corp.*,
   No. 50-2019-CC-010718 (filed Aug. 14, 2019) .......................................................................6

*Silvis v. Ambit Energy L.P.*,
   326 F.R.D. 419 (E.D. Pa. 2018)..............................................................................................25

*Skeen v. BMW of N. Am., LLC*,
   2016 WL 4033969 (D.N.J. July 26, 2016)..............................................................................23

*Smith v. Merck & Co.*,
   2019 WL 3281609 (D.N.J. July 19, 2019)..............................................................................24

*Somogyi v. Freedom Mortg. Corp.*,
   2020 WL 6146875 (D.N.J. Oct. 20, 2020).......................................................................24, 27

*Spark v. MBNA Corp.*,
   48 F. App'x 385 (3d Cir. 2002) ..............................................................................................34

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).....................................................................................................22

*Taylor et al v. Costco Wholesale Corp.*,
    No. 20-cv-00655 (E.D. Cal.) (filed Mar. 27, 2020) ..........................................7, 10

*Tomlinson v. Monsanto*,
    1916-CV22788 (which is currently pending in the Circuit Court of Jackson
    County) ...........................................................................................................12, 13, 33

*Udeen v. Subaru of Am., Inc.*,
    2019 WL 4894568 (D.N.J. Oct. 4, 2019) ...............................................................26

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)..................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................19

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir.2004).............................................................................. *passim*

*Waters v. Home Depot USA, Inc.*,
    No. 50-2019-CC-009140 (filed July 15, 2019).........................................................7

*Weeks et al v. Lowe's Home Centers, LLC*,
    No. 2:19-cv-06828 (C.D. Cal.) (filed Aug. 6, 2019) ................................................7

*Weeks v. Home Depot*,
    2:19-cv-06780 (C.D. Cal.) (filed Aug. 8, 2019) ................................................7, 10

*Williams et al v. Lowe's Home Centers, LLC*,
    No. 5:20-cv-01356 (C.D. Cal.) (filed July 6, 2020)..................................................7

## Statutes

Delaware Consumer Fraud Act....................................................................... *passim*

Federal Fungicide, Rodenticide, and Insecticide Registration Act....................4, 8, 9, 31

Missouri Merchandising Practices Act ..................................................................12, 14

## Other Authorities

U.S. Const. amend. I ................................................................................................31, 32

Baum Hedlund, *Monsanto Papers*, https://www.baumhedlundlaw.com/toxic-tort-
    law/monsanto-roundup-lawsuit/monsanto-secret-documents/ (last visited June
    8, 2021) ....................................................................................................................30

Baum Hedlund, *Monsanto Papers*, https://www.baumhedlundlaw.com/toxic-tort-law/monsanto-roundup-lawsuit/monsanto-secret-documents/ (last visited Apr. 13, 2021) ........................................................................................................25

Environmental Protection Agency, *Glyphosate Registration Review Docket*, https://www.regulations.gov/docket/EPA-HQ-OPP-2009-0361 (last visited Apr. 13, 2021) ........................................................................................................25

Environmental Protection Agency, *Glyphosate Registration Review Docket*, https://www.regulations.gov/docket/EPA-HQ-OPP-2009-0361 (last visited June 8, 2021) ........................................................................................................29

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Civ. P. 26 ..............................................................................................4, 7

Fed. R. Ev. 408 ...................................................................................................10

W. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011) ...............................18

With Defendant Monsanto Company's consent, Plaintiffs Scott Gilmore, Julio Ezcurra, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor, Sherry Hanna, and Kristy Williams ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the Settlement Class, move for preliminary approval of a proposed nationwide Settlement Agreement.[1]

## INTRODUCTION

This is an alleged consumer-fraud class action in which Plaintiffs allege that Monsanto marketed and sold glyphosate-containing Roundup® Weed & Grass Killer products (the "Products"[2]) without disclosing that they may cause cancer or other health effects. Monsanto denies Plaintiffs' allegations and denies any liability. The proposed nationwide Settlement follows litigation brought by purchasers of the Products in this Court and in other federal and state courts around the country (the "Related Actions") against Monsanto and retailers of the Products related to the failure to disclose these alleged risks. Following litigation and discovery in other Related Actions, as well as litigation, mediation, and extensive arm's length negotiations in this action, the parties have agreed to a claims-made settlement pursuant to which Monsanto will establish a fund between $23 million (the "Floor Amount") and $45 million (the "Ceiling Amount") against which Class Members can submit claims for approximately 20 percent of the average retail price of the Products they purchased.[3]

---

[1] The Settlement Agreement is attached to the Declaration of Gillian Wade as Exhibit 1. Unless otherwise specified, all capitalized terms herein have the meanings specified in the Settlement Agreement.

[2] This settlement only addresses Lawn & Garden Products, which are marketed and sold for purchase and use by consumers for noncommercial applications. The settlement is not intended to reach Roundup® products marketed and sold for agricultural ("AG") and industrial and professional ("I&P") applications, and those products are not included in the definition of "Products."

[3] Payments per unit range from $0.50 to $33.00, for up to 11 units (depending on the state of purchase) without proof of purchase, depending on the price of the product(s) purchased. The

This Settlement is not only fair to the Class but provides it with an outstanding result.  The compensation available to Class Members is more than two-thirds of Plaintiffs' estimate of best-case damages, and many times more than Monsanto's expert's estimate of its worst-case damages (assuming liability were established).  The Settlement is particularly remarkable in light of the litigation risks to Plaintiffs if these claims are not settled.  It allows for robust Class Notice and permits Class Members to claim substantial monetary refunds ($1.00 to $33.00 per unit, depending on the size of the bottle).  Class Members, in return, release their economic-loss claims (for which they are compensated under the Settlement) based on the alleged misrepresentations and omissions at issue, but they do *not* release any claims for personal injury—which claims are expressly preserved by the Settlement.

For the reasons set forth below, the Settlement readily meets Federal Rule of Civil Procedure 23(e) and the Third Circuit's standards for fairness, reasonableness, and adequacy under *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) and *Krell v. Prudential Insurance Co. of America* (*In re Prudential*), 148 F.3d 283 (3d Cir. 1998).  Preliminary approval should be granted.

## FACTS

### A.      Background and Procedural History

Plaintiffs' Second Amended Complaint makes factual allegations and asserts legal theories

---

amount available for each Product is shown in Paragraph E.1 of the Settlement Agreement.  With the exception of the three largest concentrated Products, claims can be made without proof of purchase, but such claims are limited to one unit per year within the Class Period, with the exception of the three largest concentrated Products, which will require valid proof of purchase. For example, if a Claimant purchased a 1.33 gal. container of Roundup® Ready to Use Max Control 365 in California once a year since 2015, the refund amount could be $42.00 without proof of purchase.  However, if the Class Member provides valid proof of purchase, he may claim an unlimited number of bottles of the Products.  Claimants may be contacted by the Claims Administrator, in its discretion, and also required to provide a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient.

substantively identical to the allegations and claims asserted in more than a dozen actions prosecuted by Class Counsel, Plaintiffs' Counsel,[4] and their associates in federal and state courts around the country, against both Monsanto and large retailers of the Roundup® Products, beginning in July 2019.  Plaintiffs in this case and the Related Actions allege that Monsanto's glyphosate-containing Roundup® Products were improperly marketed and sold without disclosing that they may cause cancer and that Class Members who purchased those products therefore did not receive the benefit of their bargain.  The litigation in the Related Actions—and particularly in the *Ezcurra* action—contributed significantly to the settlement in this matter.

1.     **Allegations in the Actions**

This action and the Related Actions allege substantially similar claims asserting violations of state consumer-protection and false-advertising statutes related to the marketing and sale of Monsanto's Roundup® Products without warning of their alleged carcinogenicity and health risks. These cases include various federal and state class actions against Monsanto and retailers that sell the Products, as well as individual state actions against retailers.  With certain variations, these actions are based on the same core set of allegations related to the alleged health risks of the Products and glyphosate—the active ingredient in the Products.  All the cases allege economic loss as a result of Monsanto's failure to warn of the Products' health risks on the Products' labels or at the point of sale—alleging that but for the failure to disclose these risks, Plaintiffs here and in the Related Actions would not have purchased the products and/or paid more for the products than they otherwise would have.

---

[4] Plaintiffs' Counsel means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and Harrelson Law Firm, P.A. *See* Settlement Agreement ¶ A.39.

Monsanto and the retailer-defendants have generally defended against these cases by pointing to scientific studies and repeated findings by EPA that glyphosate is not carcinogenic and does not pose any unreasonable risks to human health, that the product labels include all required information, and that cancer warnings on Roundup® Products are unwarranted and/or improper. In addition, the retailer-defendants have asserted (successfully in some cases) that they do not control the product labeling and/or do not have any independent duty to disclose.  In many cases, Monsanto and retailers have argued that Plaintiffs' claims seeking label changes or product bans are preempted by federal law because glyphosate-based herbicides, including all Roundup® Products at issue in these cases, have been repeatedly registered with EPA under the Federal Fungicide, Rodenticide, and Insecticide Registration Act ("FIFRA"), which strictly regulates the content of labeling for registered products and prohibits unapproved alterations to approved health and safety claims.

### 2. The *Ezcurra* Action

On February 19, 2020, Class Counsel and certain of Plaintiffs' Counsel filed *Ezcurra* in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, seeking to represent a Florida class of Roundup® purchasers of the Roundup® Products.[5]  *Ezcurra* Compl. ¶¶ 20-90.  Monsanto removed the case to federal court on March 27, 2020, and moved to dismiss the Complaint on April 3, 2020.  After several months of motion practice, the parties conducted a Rule 26(f) conference on May 4, 2020, filed a Joint Discovery Plan a week later, and commenced discovery.

The parties exchanged Rule 26 initial disclosures on May 18, 2020, and exchanged written discovery between May and July 2020.  Ezcurra served Monsanto with 13 interrogatories, 27

---

[5] *Ezcurra et al v. Monsanto Co.*, No. 9:20-cv-80524 (S.D. Fla.) (filed Feb. 19, 2020), Compl. ¶¶ 20-90.

requests for admission, and 55 requests for production. Monsanto provided a total of 34 pages of interrogatory responses and 25 pages of admissions, and produced thousands of pages of documents, including sales data. Ezcurra issued a notice of deposition to Monsanto's Global Packaging and Labeling Lead, Jerry Lambert, on June 5, 2020, and Monsanto issued a Notice of Deposition to Plaintiff Julio Ezcurra on August 3, 2020 to take his deposition on August 10, 2020.

Class Counsel also retained Dr. D.C. Sharp, Ph.D., an economic expert and formerly tenured Associate Professor of Economics and Business Advisory Council Research Professor at the University of Southern Mississippi. D.C. Sharp Expert Report ¶¶ 4-5. Dr. Sharp analyzed over 2,000 pages of written discovery materials, over 30 scholarly publications and EPA reports, and prior motions practice to prepare a hedonic-regression analysis estimating the impact of the alleged failure to warn of Roundup's cancer risk. *Id.* App. B. Dr. Sharp compiled and analyzed a dataset of prices and product attributes of various non-selective, non-crop herbicides sold by Home Depot, Lowe's, Ace Hardware, and Tractor Supply Company to Florida consumers. *Id.* ¶ 20. The dataset captured 282 prices pertaining to 177 unique products from 29 different brands. *Id.* ¶ 22. Dr. Sharp's report concluded that consumers had paid a price premium of 31 percent more than what they would have been willing to pay for a similar product that disclosed a carcinogenic active ingredient. *Id.* ¶¶ 28-31.

While the parties were engaged in discovery, Monsanto's motion to dismiss was pending before the court. Monsanto moved to dismiss on several grounds, including that (1) Gilmore's state-law claims were preempted; (2) the Roundup® Products' labeling is presumptively lawful because of EPA's repeated approval of such without a cancer warning, and the plaintiff had alleged no facts to overcome that presumption; (3) the plaintiff lacked Article III standing to bring claims relating to products he did not purchase; (4) the plaintiff lacked standing to seek declaratory or

injunctive relief because he alleged that he would not purchase Roundup® Products in the future; and (5) Ezcurra's state-law claims were barred by Florida's "safe harbor" provision for actions required or permitted by regulatory authorities.  Def. Monsanto Co.'s Mot. to Dismiss (ECF 35) at 1-3, 11-17, 18, 19-20, *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524-DMM (S.D. Fla.); Def. Monsanto Co.'s Supp. Br. Regarding FDUTPA Safe Harbor (ECF 55), *Ezcurra*, No. 9:20-cv-80524-DMM.

On August 6, 2020—following a lengthy hearing and a round of supplemental briefing ordered by the court—Monsanto's motion to dismiss was granted, solely on the final ground, agreeing that FDUTPA's safe harbor provision barred Plaintiff's state-law claims because the Roundup® labels were specifically permitted by federal and state law.  *Ezcurra v. Monsanto Co.*, 2020 WL 5491428, at *6 (S.D. Fla. Aug. 7, 2020).  The court did not accept or reject Monsanto's other arguments for dismissal—it ruled only on the safe harbor argument, which it concluded was dispositive.  *Id.* at *1 & n.1.  Ezcurra filed a notice of appeal with the U.S. Court of Appeals for the Eleventh Circuit challenging the court's dismissal order.  That appeal has been fully briefed since March 8, 2021, and is scheduled for oral argument in September.

While the *Ezcurra* case remains pending on appeal, the parties have relied on the discovery record developed in *Ezcurra* in reaching the instant Settlement.

### 3.    The Related Actions

Given the substantial number of Related Actions, for purposes of brevity, this Motion does not detail their procedural histories.  Attached hereto as Appendix A is a chart summarizing each case's procedural history.  *See Lamerson v. Walmart Stores, Inc.*, No. 50-2019-CC-009139 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Shelly v. Target Corp.*, No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed Aug. 14, 2019); *Biddle v. Lowe's Home Ctrs. LLC*, No. 50-2019-CC-011405 (Cnty. Ct. 15th Cir. in and for

Palm Beach Cnty., Fla.) (filed Aug. 27, 2019); *Morley v. Ace Hardware Corp.*, No. CONO-19-010648 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Sept. 6, 2019); *Waters v. Home Depot USA, Inc.*, No. 50-2019-CC-009140 (Cnty. Ct. 15th Cir. in and for Palm Beach Cnty., Fla.) (filed July 15, 2019); *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) (filed Mar. 21, 2020); *Hanna et al v. Walmart, Inc.*, CIV SB 2100789 (Super. Ct. Cal. for San Bernardino) (filed Jan. 12, 2021) ("*Hanna II*"); *Gregorio et al v. Home Depot U.S.A., Inc.*, No. CACE-21-002428 (Cnty. Ct. 17th Cir. in and for Broward Cnty., Fla.) (filed Feb. 4, 2021); *Weeks et al v. Lowe's Home Ctrs., LLC*, No. 2:19-cv-06828 (C.D. Cal.) (filed Aug. 6, 2019); *Weeks v. Home Depot*, 2:19-cv-06780 (C.D. Cal.) (filed Aug. 8, 2019); *Jewell et al v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) (filed Aug. 12, 2019); *Boyette et al v. Lowe's Cos., Inc.*, No. 4:19-cv-04119 (W.D. Ark.) (filed Sept. 13, 2019); *Taylor et al v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) (filed Mar. 27, 2020); *Hanna et al v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) ("*Hanna I*"); *Williams et al v. Lowe's Home Ctrs., LLC*, No. 5:20-cv-01356 (C.D. Cal.) (filed July 6, 2020).

Significant work was performed in several of the Related Actions, and the Related Actions contributed to the settlement of the instant matter. For example, in *Weeks v. Home Depot*, the parties briefed three motions to dismiss, participated in a Rule 26(f) conference, jointly filed a Rule 26(f) report (after which the court entered a scheduling order), and engaged in substantial discovery, exchanging over 17,000 pages of documents and data.

### 4.    This Action

Gilmore filed the initial Complaint in this matter on August 19, 2020, on behalf of himself and a putative class of "[a]ll persons who purchased at least one [Roundup®] Product in the United

States since August 19, 2017." DI 1 ¶ 111.[6]  He averred that Monsanto violated the Delaware

Consumer Fraud Act ("DCFA") by promoting, marketing, advertising, distributing, labeling, and

selling Roundup® Products without disclosing that they may cause cancer.  DI 1 ¶¶ 131-32.

Gilmore sought the certification of a nationwide class under Federal Rule of Civil Procedure 23

and sought damages for economic injury and injunctive relief on behalf of himself and the putative

class.  *Id.* ¶¶ 111, 139, 140, 142; *id.* at Prayer for Relief.

On December 3, 2020, Monsanto moved to dismiss Gilmore's initial Complaint pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Monsanto argued that Gilmore lacked

Article III standing, that Gilmore's claim was expressly preempted by FIFRA, that Gilmore's claim

was barred by the doctrine of impossibility preemption, and that Gilmore failed to allege facts that

could constitute unfair or deceptive conduct in Delaware to state a claim under the DCFA.  *See*

DI 10, 11.  As to Article III standing, Monsanto argued that Gilmore's claim was foreclosed by *In*

*re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278,

283, 285 (3d Cir. 2018), which held that a plaintiff seeking damages for economic injury on a

"benefit of the bargain" theory must plead facts permitting a determination "that the economic

benefit she received in purchasing the [product at issue] was worth less than the economic benefit

for which she bargained."  *See* DI 11 at 7-9.

Gilmore filed his First Amended Complaint ("FAC") on January 12, 2021.  *See* DI 14.  Like

the initial Complaint, the FAC alleged that Monsanto violated the DCFA by promoting, marketing,

advertising, distributing, labeling, and selling Roundup® Products without disclosing that they

may cause cancer (*id.* ¶¶ 132-33; *see id.* ¶¶ 6-8), sought the certification of a nationwide class of

---

[6] Gilmore originally filed a complaint asserting a similar claim against Monsanto in the District of
Oregon on August 6, 2020 (Case No. 3:19-cv-01123-BR).

purchasers (*id.* ¶ 112), and sought damages for economic injury and injunctive relief on behalf of Gilmore and the putative class (*id.* ¶¶ 140, 141, 143; *id.* at Prayer for Relief). Recognizing *Johnson & Johnson*, however, Gilmore amended his Complaint to assert a "price premium" theory of injury. Specifically, the FAC alleged that Gilmore and the putative class "paid a price premium for the [Roundup®] Product given Roundup's potential carcinogenicity was undisclosed" and that, "but for Defendant's omissions, the actual price Plaintiff and Class Members paid would have and should have been less." DI 14 ¶¶ 109, 110.

Monsanto moved to dismiss the FAC on January 26, 2021. *See* DI 15, 16. It again argued that Gilmore lacked Article III standing, that his claim was expressly preempted by FIFRA and barred by impossibility preemption, and that he failed to allege unfair or deceptive conduct in Delaware to state a claim under the DCFA. *See* DI 16. Gilmore opposed, arguing he had Article III standing for monetary relief because he paid a price premium for Roundup® and therefore suffered an economic injury. Plaintiff argued that *In re Johnson & Johnson Talcum Powder Product Marketing, Sales Practices & Liability Litigation*, 903 F.3d 278 (3d Cir. 2018), was distinguishable because the plaintiff in that case relied solely on an alternative "benefit of the bargain" theory (rather than a price-premium theory) and, unlike the *Johnson & Johnson* plaintiff, Gilmore had not "entirely consumed" the product. Gilmore further argued he had Article III standing for injunctive relief because he alleged he was at risk of future economic injury (i.e., purchasing Roundup® again and paying a price premium), which he argued was plausible given that Monsanto continues to make Roundup® products available for purchase without any type of warning. Gilmore opposed Monsanto's express-preemption arguments on grounds that his proposed relief did not impose a "labeling" or "packaging" requirement as defined under the FIFRA and, even if it did, that Gilmore's claim was equivalent to, and entirely consistent with, FIFRA's misbranding

provision.  Gimore opposed Monsanto's implied-preemption arguments on grounds that Monsanto failed to provide clear evidence that EPA was fully informed of Roundup®'s potential carcinogenicity and had determined through an agency action that it would not approve a cancer warning.  Lastly, Gilmore argued he adequately stated a claim under the DCFA because at least some of Monsanto's unlawful conduct occurred in Delaware.

On June 10, 2021, Plaintiffs filed a Second Amended Complaint, which added seven additional named plaintiffs (each of whom was a plaintiff in one or more of the Related Actions) and corresponding causes of action for each, both under the DCFA and for breach of warranty. Dkt. No. 21-1.

### 5.      Mediation and Settlement Negotiations

While Monsanto's motion to dismiss the FAC was pending, the parties conducted a joint mediation before the Honorable Diane M. Welsh of JAMS.  Class Counsel and counsel for Monsanto had previously designated Judge Welsh as a private mediator in *Ezcurra* in May 2020 pursuant to the Southern District of Florida's Local Rules and the court's Pretrial Scheduling Order. *See* Notice of Mediator Selection, Dkt. No. 25, *Ezcurra v. Monsanto Co.*, Case No. 9:20-cv-80524-DMM (S.D. Fla.).  At the time, the parties anticipated that any mediation before Judge Welsh would attempt to resolve all Related Actions pending against Monsanto and the major retailers of its Roundup® Products.  *Id.*

Class Counsel continued to prosecute the Related Actions after *Ezcurra* was dismissed, including by appealing *Ezcurra* to the Eleventh Circuit and filing the instant action.  Although Class Counsel continued to believe the merits of the Related Actions were strong, Plaintiffs encountered several roadblocks after this case was filed in August 2020.  Between September 2020 and January 2021, courts dismissed, with leave to amend, complaints in three Related Actions: *Weeks v. Home Depot*, *Taylor v. Costco*, and *Hanna v. Walmart*.  The parties ultimately scheduled

a mediation in this matter on February 16, 2021, before Judge Welsh, a former United States Magistrate Judge and an experienced mediator nationally recognized for her work in complex class actions.  Decl. of Hon. Diane M. Welsh ¶ 5-6.

In anticipation of the mediation, Gilmore and Monsanto each separately prepared lengthy mediation statements, complete with hundreds of pages of exhibits from this action and the Related Actions, for submission to Judge Welsh and opposing counsel pursuant to Federal Rule of Evidence 408.  *Id.*  The mediation statements set forth the parties' respective views of the strengths and weaknesses of their cases on the merits, the likelihood of certifying a national class in this action and classes in California in the Retailer Actions, and a reasonable estimate of damages should Plaintiff succeed.  *Id.*  Both Gilmore and Monsanto also prepared confidential statements for Judge Welsh's eyes only that provided more detail concerning their respective positions and damages estimates.  *Id.*  To facilitate settlement discussions, Monsanto produced nationwide sales data for its Roundup® Products to Plaintiff.  Wade Decl. ¶ 6.  The mediation took place before Judge Welsh via videoconference on February 16, 2021.  Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP and Joel Oster of the Law Offices of Howard Rubinstein participated for Plaintiff.  Monsanto was represented by John J. Rosenthal and Jeff Wilkerson of Winston & Strawn LLP and Robyn D. Buck and William B. Dodero of Monsanto. The sometimes contentious negotiations lasted more than *fourteen hours* and involved multiple rounds of shuttle diplomacy and face-to-face negotiations among counsel facilitated by Judge Welsh.  Welsh Decl. ¶¶ 6-8.  Shortly after midnight, however, the parties reached an agreement in principle.  *Id.* ¶ 9.  After further negotiations regarding the details of the agreement, the parties executed the Settlement Agreement on June 9, 2021.

### 6.    The *Tomlinson* Action

The Related Actions, as defined herein, are those actions asserting claims by purchasers of

Monsanto's Lawn & Garden Roundup® products (*see supra* n.2), but there is a single related case

that also asserts claims on behalf of Missouri purchasers of Monsanto's agricultural ("AG") and

industrial and professional ("I&P") Roundup® products, namely *Tomlinson v. Monsanto*,

1916-CV22788 (which is currently pending in the Circuit Court of Jackson County).

*Tomlinson* was filed on August 19, 2019 by Plaintiffs Ryan Tomlinson, Sarah Jordan, and

Keith Madden.  The complaint, which was amended on October 17, 2019, to add two additional

plaintiffs (Carol Green Richardson and Christi Gray), alleges economic loss under Missouri's

consumer-protection/false-advertising statute, the Missouri Merchandising Practices Act

("MMPA").[7]  The MMPA permits recovery for false and deceptive advertising where the purchases

are "primarily" for "family, household and personal purposes."  Mo. Rev. Stat. 407.025.

Unlike the Related Actions, the plaintiffs in *Tomlinson* seek to recover on behalf of

Monsanto's I&P and AG purchasers as well as Lawn & Garden purchasers.  The *Tomlinson* action

is thus broader than the instant action and other Related Actions, all of which are limited to

purchases of Lawn & Garden Products.

The parties in *Tomlinson* engaged in extensive class certification briefing where Monsanto

argued, among other things, that certification of the proposed class was inappropriate because,

among other reasons, it includes purchasers of AG and I&P products despite the MMPA's

requirement that claims be predicated on the purchase of products "primarily for personal, family,

---

[7] Like the Related Actions, the complaint alleges that Monsanto sold Roundup®-brand glyphosate-containing products without disclosing that "Roundup is a known carcinogen," *Tomlinson* Am. Pet. ¶ 3, and that this caused them to pay more than they would have for the Products, *id.* ¶¶ 73, 93, 94.  The plaintiffs seek money damages in an amount equal to "a refund for monies paid as a result of their purchases of Roundup."  *Id.* ¶ 4; *id.* ¶¶ 78, 84, Prayer for Relief subpara. b.

or household purposes." *Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 423 (Mo. Ct. App. 2020) (purchase for personal, family, or household purposes is an element of MMPA claim). Nevertheless, the state court certified a class on March 22, 2021, of "[a]ll Missouri residents who purchased Roundup primarily for personal, family, or household use," which includes I&P and AG purchasers (assuming they can prove they bought Monsanto's commercial and industrial products for such purposes). Monsanto has filed a petition for a writ of prohibition with the Missouri Supreme Court, which is currently pending.[8] Notice of the pendency of *Tomlinson* case not been disseminated to members of the proposed class in that case.

## B.    The Key Terms of the Settlement

### 1.    The Settlement Class

The Settlement includes conditional certification of a Settlement Class consisting of all persons in the United States who, during the Class Period,[9] purchased the Products in the United States other than for resale or distribution. Settlement Agreement §§ A.51, B.1, B.3-4. "Products" is defined by reference to a list of Lawn & Garden Roundup®, Ace®, and HDX®[10] glyphosate-containing products (purchasers of other products are not part of the Settlement Class).[11]   *Id.*

---

[8] In connection with this Motion for Preliminary Approval, Monsanto is separately moving this Court for an injunction staying further prosecution of all cases, including *Tomlinson*, that assert Released Claims by or on behalf of Class Members who purchased Lawn & Garden Products pending the Court's decision on whether to grant final approval of the proposed settlement.

[9] The "Class Period" is separately defined for each state by reference to the applicable statute of limitations for false-advertising or breach-of-warranty claims (whichever is longer) in that state (accounting for any COVID-related tolling and any tolling as a result of related cases). Settlement Agreement § A.20 & Ex. B.

[10] The included Ace® and HDX® products were manufactured by Monsanto and sold by its agent.

[11] The inclusion of purchasers of other Roundup® products in the *Tomlinson* class should not affect the Court's evaluation of the settlement at issue here. Such purchasers are not included in the Settlement Class definition in this case. Purchasers in Missouri are included in the Settlement

§ A.44.  Also excluded from the Settlement Class are (i) judicial officers and associated court staff assigned to this case, and their immediate family members; (ii) past and present (as of the Effective Date) officer, directors, and employees of Monsanto; and (iii) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class pursuant to this Agreement and in the manner approved by the Court and set forth in the Class Notice.  *See* Settlement Agreement § A.51.

### 2.    Relief to the Class Members

#### a.    Monetary Relief: Up to $45 Million Cash Consideration

Monsanto will pay total cash consideration in the amount of no less than $23 million (the "Floor Amount") and no greater than $45 million (the "Ceiling Amount").  Settlement Agreement § D.  Cash consideration includes all amounts Monsanto agrees to pay in settlement of the Released Claims, including but not limited to, all costs of Class Notice, Claims Administration Expenses, Class Member Claims, Class Representative service awards, Class Counsel's Expenses, and Class Counsel's fees.  *Id.* § D.1.  Monsanto will not be required to pay an amount greater than the Ceiling Amount, nor will Monsanto be subject to any interest obligation or inflation adjustment.  *Id.* §§ D.3-4.

#### b.    Class Notice and Administration Costs

Monsanto will retain Postlethwaite & Netterville ("P&N") as the Claims Administrator to effect Class Notice and administration in consultation with Class Counsel.  *Id.* § G.  P&N will execute the Notice Plan agreed to by the Parties and approved by the Court; answer written inquiries from Class Members and/or forward those inquiries to Class Counsel as appropriate; receive and maintain forms from Class Members who choose to opt out of the Agreement; establish

---

Class—and impacted by the Settlement—only if they purchased the "Products" as defined in the Settlement Agreement.

a Settlement website and toll-free informational telephone number; receive and process Claims for Relief from claimants; and otherwise assist with administration of the Agreement as required. *Id.* Upon final approval of the Agreement (and the expiration and/or objection of any appeals), P&N will also issue payments to Approved Claimants.

P&N is highly experienced in designing notice plans and administering class action settlements.[12]  Decl. of Brandon Schwartz ¶¶ 1-5.  P&N has designed an extensive notice program to provide notice to members of the Settlement Class and ensure they will be exposed to, see, review, and understand the notice provided. *Id.* ¶ 13.  The proposed Notice Plan is multifaceted and employs a combination of (1) print media, (2) online display, (3) social media, (4) online video, (5) television, (6) digital newsletters, (7) search advertising, (8) third-party class action websites, (9) direct notice via email to millions of likely purchasers of the Products; (10) a national press release, (11) a toll-free settlement hotline, and (12) a settlement website. *Id.*  The Notice Plan is estimated to have a measurable reach of *at least* 80 percent of the Settlement Class, with Class Members being exposed to notice, on average, 2.24 times. *Id.* ¶ 14.  This estimate is conservative, because it does not include impressions resulting from the third-party class action website, direct notice via email, or the national press release, which are expected to meaningfully strengthen both the reach and the frequency of the Notice Plan, but whose effects are not measurable. *Id.*  A detailed description of the Notice Plan and its components is included in the declaration of P&N's Director of Notice, Brandon Schwartz, filed concurrently with this Motion.

### c.    Service Awards and Attorneys' Fees and Costs

Class Counsel and Class Representatives will apply for an order awarding attorneys' fees

---

[12] Notably, P&N was the administrator and designed a notice program in another settlement involving Roundup® consumer products, which recently received final approval. *Jones v. Monsanto Co.*, 2021 U.S. Dist. LEXIS 91260 (W.D. Mo. May 13, 2021). P&N's knowledge from that settlement will contribute to efficiently providing the best notice possible.

and costs, and service awards of $5,000 to each Class Representative, to be paid by Monsanto. Monsanto will not contest a request for Class Counsel's Fees that does not exceed 25 percent of the full amount available to the class, nor will it oppose the proposed service awards for the Class Representatives. *Id.* § G.1. Monsanto acknowledges and agrees Class Counsel assumed significant risk pursuing this novel and complex matter on several fronts for over two years, and that the litigation pursued in the Related Actions contributed significantly to bringing this matter to resolution. *Id.* § G.2.

### d.    Payment of Class Members' Claims

Class Members will be able to claim refunds by submitting a Claim Form to the Class Administrator. *Id.* § I. The Claim Form will include (i) contact information, (ii) the quantity and type of Product(s) that were purchased, (iii) the retailer and location where the Products were purchased, and (iv) the approximate date(s) or date ranges when the Products were purchased. *Id.* §§ I.4.a–d. Recognizing that many consumers will not have retained receipts or wish to go through the effort of locating them, proof of purchase will not be required to claim up to one product for each year of the Class Period, except for the largest and highest-priced concentrated products, which will require valid proof of purchase. *Id.* § I.6. As to any of the Products, if the Class Member provides a valid proof of purchase with a Claim Form, (s)he may claim an unlimited number of bottles of the Products. Claimants who provide proof of purchase may be contacted in the Class Administrator's discretion and also required to provide a declaration signed under penalty of perjury that provides additional information to confirm that the proof of purchase is genuine and sufficient. *Id.* § I.7.

If the Ceiling Amount is sufficient after payment of all other amounts set out in the Agreement, Monsanto will pay each Authorized Claimant an amount equal to approximately 20 percent of the average retail price for each product that Class Member purchased, rounded to the

nearest 50 cents.  Depending on the product purchased, this will amount to between $0.50 and $33.00 for each product purchased.  *Id.* § E.1.  If, after accounting for all other amounts Monsanto is required to pay under the Agreement and the total value of all Claims for Relief made by Authorized Claimants, the Floor Amount is not reached, then payment to Authorized Claimants will be adjusted upward on a pro rata basis as needed to exhaust the Floor Amount.  *Id* § E.3.  If, on the other hand, the Ceiling Amount is insufficient to allow payments in the above amounts to all Authorized Claimants after accounting for all other amounts Monsanto is required to pay under the Agreement, then the payments to Authorized Claimants will be adjusted downward on a pro rata basis as needed to permit payment of all Authorized Claimants without exceeding the Ceiling Amount.[13]  *Id* § E.2.

### 3.      The Release

Class Members who do not opt out will release Monsanto, retailers, and related entities from all claims—with the express exception of personal-injury claims—arising from or relating to any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or other health effects of the Roundup® Products, as more fully specified in the Agreement.  *Id.* § L.1-3.

### 4.      Procedures for Opting Out or Objecting

Class Members who wish to opt out of and be excluded from the Agreement may submit an Opt-Out Form available on the Settlement Website or a request to the Settlement Administrator,

---

[13] The Settlement Agreement also includes a detailed provision for the disposition of funds in unclaimed, uncashed, or otherwise unredeemed checks.  Settlement Agreement §§ E.4-5.  In short, under no circumstances will any amount revert to Monsanto that would result in total cash consideration that is less than the Floor Amount.  To the extent that unclaimed, uncashed, or otherwise unredeemed checks would cause the total cash consideration to fall below the Floor Amount, those amounts will either be distributed to Class Members pro rata or, if further distributions to Class Members are not economically feasible, be donated to the National Consumer Law Center.  *Id.*

by the deadline and procedure set forth in the Agreement.  *Id.* § J.  The process to opt out is simple and involves completing, signing, and submitting a simple form.  *Id.*

Class Members who wish to object must file and serve a written objection by the deadline and procedure set forth in the Agreement.  *Id.* § K.  Again, submitting an objection is simple, requiring only a caption identifying the action and that the document is an objection, information sufficient to identify and contact the objector and his or her attorney, and a concise statement of the factual and legal basis for the objection.  *Id.*  Additionally, Class Members may make a claim even if they object.

## LEGAL STANDARDS

A class action can be settled only with court approval.  *See* Fed. R. Civ. P. 23(e).  If a settlement-only class would "bind class members," a court may preliminarily approve the settlement if the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class" and the court finds that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1).  "The goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.  Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase."  W. Rubenstein, *Newberg on Class Actions* (5th ed. 2011) § 13:13; *see also Lupian v. Joseph Cory Holdings*, 2019 WL 3283044, at *5 (D.N.J. July 22, 2019) ("This preliminary evaluation is not binding on the court and is granted unless a proposed settlement is obviously deficient.").

## ARGUMENT

### I.    The Nationwide Settlement Class Should Be Certified

#### A.    The Numerosity Requirement of Rule 23(a)(1) Is Satisfied

The Parties estimate that there are millions of purchasers of Roundup® Products during the class period.  Wade Decl. ¶ 16.  This easily satisfies the Rule 23(a)(1) numerosity requirement.  *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), *as amended* (May 2, 2016) ("There is no magic number of class members needed for a suit to proceed as a class action, [but] numerosity is generally satisfied if there are more than 40 class members.").

#### B.    The Commonality Requirement of Rule 23(a)(2) Is Satisfied

"[C]ommonality requires that the class members' claims depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (citations omitted).  "Meeting this requirement is easy enough: [the Third Circuit has] acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable."  *NFL Players*, 821 F.3d at 426-27 (citations omitted).

Here, all Class Members' claims arise from the assertion that class members suffered economic damages when they purchased Monsanto's Roundup® Products because those products and their advertising lacked warnings regarding the products' alleged health risks.  Thus, Plaintiff "ha[s] alleged that the class was subjected to the same kind of illegal conduct by the same entit[y]," and "[e]ven if [their] particular injuries are unique, their . . . claims still depend on the same

19

common questions regarding the defendant's conduct." *Id.* at 427.  The commonality requirement is therefore satisfied.

### C.      The Typicality Requirement of Rule 23(a)(3) Is Satisfied

Typicality requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Third Circuit has "set a 'low threshold' for typicality" where "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *NFL Players*, 821 F.3d at 428 (citations omitted).  "[C]lass members need not share identical claims, and cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Id.*

Here, the Class Representatives claim Monsanto misrepresented Products sold to consumers by failing to label them with a cancer warning and excluding cancer from the hazards listed on the product labels, in violation of the DCFA and constituting a breach of warranty, and seek money damages related to their purchases of the Products.  They seek to certify a nationwide Settlement Class on behalf of other purchasers of the Products, who they assert were harmed in the same way and are entitled to the same type of damages.  They therefore "seek recovery under the same legal theories for the same wrongful conduct as the []class[] they represent." *Id.*  The typicality requirement is therefore satisfied.

### D.      The Adequacy Requirement of Rule 23(a)(4) Is Satisfied

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "It tests the qualifications of class counsel and the class representatives" and "aims to root out conflicts of interest within the class to ensure that all class

members are fairly represented in the negotiations." *NFL Players*, 821 F.3d at 428. The Third Circuit has "emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995). "Rule 23(g) also sets out a non-exhaustive list of factors for courts to consider when appointing class counsel[,] includ[ing] counsel's work in the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available for representing the class." *NFL Players*, 821 F.3d at 429.

Plaintiffs are adequate representatives of the Settlement Class because they have no conflicts of interest, are committed to the vigorous prosecution of this action, and have retained competent counsel, experienced in litigation of this nature, to represent them and the Settlement Class. Wade Decl. ¶¶ 19, 22-30. For example, Plaintiffs consulted with Class Counsel concerning the proposed settlement to ensure that it was in the best interest of the Class Members. *Id.* ¶ 20. Thus, Plaintiffs will adequately represent the interests of the Class Members, and should be appointed Class Representatives of the Settlement Class.

Class Counsel have also pursued this matter on several fronts for over two years and negotiated vigorously on their clients' behalf, and eventually reached a settlement that provides approximately two-thirds of the best-case scenario for Plaintiffs were they to prevail at trial. *Id.* ¶ 21. Moreover, there can be no question that Class Counsel acted at arm's length from Monsanto, particularly given that a settlement was reached with the assistance of a skilled mediator after years of litigation through multiple federal and state actions filed across the country. *See id.* ¶ 31; Welsh Decl. ¶ 9. Therefore, Class Counsel should be appointed to represent the interests of the Class Members.

E.      **Class Certification Is Appropriate Under Rule 23(b)**

1.      **Common Questions of Law and Fact Predominate**

A class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The Third Circuit has "noted that the Rule 23(b)(3) predominance requirement . . . incorporates the Rule 23(a) commonality requirement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (citations omitted). While more demanding than the commonality requirement, the Third Circuit is "more inclined to find the predominance test met in the settlement context." *NFL Players*, 821 F.3d at 434 (citations omitted). This is because, "for purposes of inquiring into the predominance of questions of law and fact relevant to a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) ("[O]bjectors seem to conflate the predicate predominance analysis for certification of a settlement class with that required for certification of a litigation class, [which] . . . implicat[es] the manageability obstacles inherent in class litigation.").

Plaintiff alleges that all Class Members are harmed in the same way, by the same conduct, based on the same law. While there are some individual issues that Monsanto argue would defeat class certification in the context of a contested class certification motion for purposes of further litigation and an ultimate trial, there are sufficient common questions of law and fact to support a settlement class. For example, whether the Products should have a cancer warning and whether omitting that warning caused Plaintiffs any economic loss are "common questions [that] are a

significant aspect of [this] case and th[at] can be resolved in a single action[.]" *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 99 (D.N.J. 2018). Because the validity of each Class Member's claims "proceed[s] from this common factual nucleus," predominance is satisfied for the purpose of settlement. *Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *6 (D.N.J. July 26, 2016). And although the specific extent of damages for each individual Class Member involves individual questions (*e.g.*, the number and types of products each Class Member purchased), this is easily accounted for by the proposed settlement and does not defeat predominance. *See NFL Players*, 821 F.3d at 434. Finally, solely for purposes of certifying the Settlement Class, Monsanto does not contest predominance.

### 2.     Settlement Is the Superior Method for Resolving This Controversy

Rule 23(b)(3)'s superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *NFL Players*, 821 F.3d at 434 (citations omitted). The Third Circuit "consider[s] the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *Id.* at 434-35; Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, superiority is satisfied because "the [s]ettlement avoids thousands of duplicative lawsuits and enables fast processing of a multitude of claims." *Id.* at 435 (citations omitted). If the Settlement Class is not certified, this case would almost certainly "result in years of costly litigation and multiple appeals, all the while delaying any potential recovery" for Plaintiffs. *Id.* Moreover, the amount of each individual claim is small, and it would not be economically viable for Class Members or Plaintiffs to pursue individual litigation. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005) (finding that class satisfied the superiority requirement where it was "unlikely that individual [c]lass [m]embers would have the resources to

pursue successful litigation on their own"); *Smith v. Merck & Co.*, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019) ("The [s]ettlement [c]lass contains approximately three-thousand members, and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals." (citations omitted)). "Further, individual actions would burden the Court." *Id.* In short, the "class action mechanism is the superior method for bringing the present class members' claims because it offers prompt relief and averts the undue costs class members [and the Court] would incur in prosecuting the[se] claims individually." *Nyby v. Convergent Outsourcing, Inc.*, 2017 WL 3315264, at *6 (D.N.J. Aug. 3, 2017) (citations omitted).

## II.    The Settlement Should Be Preliminarily Approved

"Pursuant to Federal Rule of Civil Procedure 23(e), in order for a court to approve a class settlement, it must find that the settlement is fair, reasonable and adequate." *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 238 (E.D. Pa. 2009) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995)). "Generally, courts favor parties reaching an amicable agreement and avoiding lengthy litigation." *Somogyi*, 2020 WL 6146875, at *6.

In light of these principles, the Third Circuit holds that "a district Court is required to assume a settlement is fair if '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Id.* (citing *NFL Players*, 821 F.3d at 436).

### A.    The Settlement Is Entitled to a Presumption of Fairness

The proposed Settlement in this case is entitled to a presumption of fairness. First, the Settlement resulted from arm's length negotiations. As discussed above, the parties participated in extensive settlement discussions, including a fourteen-hour mediation session before retired United States Magistrate Judge Diane Welsh, an experienced class action mediator. *See* Facts

Section B; *see also Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 426, 37 (E.D. Pa. 2018) (proposed settlement agreement was "arrived at in good faith following extensive arm's length negotiations" after full-day mediation session before Judge Welsh); *In re Budeprion XL Mktg. & Sales Litig.*, 2012 WL 2527021, at \*12, \*22 (E.D. Pa. July 2, 2012) (initial presumption in favor of settlement applied because of arm's length negotiation after eleven-hour mediation session before Judge Welsh); *Alves v. Main*, 2012 WL 6043272, at \*22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Curiale v. Lenox Grp., Inc.*, WL 4899474, at \*2, \*5 (E.D. Pa. Nov. 14, 2008) (settlement agreement was negotiated in good faith and at arm's length following all-day mediation session with Judge Welsh).

Second, while the parties did not directly conduct discovery in this action, Plaintiff has access to the discovery taken in certain of the Related Actions, including *Ezcurra* and *Weeks II*, as discussed above.  Further, the parties engaged in informal discovery, as Monsanto produced nationwide sales data for its Roundup® Products in order to facilitate settlement discussions.  *See NFL Players*, 821 F.3d at 436 ("To the extent objectors ask us to require formal discovery before presuming that a settlement is fair, we decline the invitation.  In some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation.").  Moreover, this case is unique in that extensive discovery information has been produced—and is available online—from ongoing personal-injury litigation, as is the extensive regulatory and scientific record from EPA, which Class Counsel reviewed and considered in assessing the strengths and weaknesses of this case and evaluating its settlement position.  *See* Baum Hedlund, *Monsanto Papers*, https://www.baumhedlundlaw.com/toxic-tort-

law/monsanto-roundup-lawsuit/monsanto-secret-documents/ (last visited Apr. 13, 2021); *see also* Environmental Protection Agency, *Glyphosate Registration Review Docket*, https://www.regulations.gov/docket/EPA-HQ-OPP-2009-0361 (last visited Apr. 13, 2021).

Third, the proponents of settlement are experienced in similar litigation. Monsanto's counsel has extensive experience with nationwide class action litigation generally and, specifically, with consumer class action litigation involving Monsanto and its products. Class Counsel, as discussed above and in the concurrently filed Wade declaration, also has substantial experience with this type of litigation.

Finally, although the parties do not yet know whether there will be objectors to the Settlement, this is no obstacle to a finding of a presumption of fairness where the foregoing factors are present. *See, e.g.*, *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019) (finding presumption of fairness on motion for preliminary approval because "[a] settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery'" (citing *Rudel Corp. v. Heartland Payment Sys., Inc.*, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017))).

## B. The Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2), as amended effective December 1, 2018, sets forth the considerations that should guide a district court's determination of settlement fairness.[14] However, the Advisory

---

[14] These include whether "(A) [t]he class representative and class counsel have adequately represented the class; (B) [t]he proposal was negotiated at arm's length; (C) [t]he relief provided for the class is adequate, taking into account: (i) [t]he costs, risks, and delay of trial and appeal; (ii) [t]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) [t]he terms of any proposed award of attorney's fees, including timing of payment; and (iv) [a]ny agreement required to be identified under Rule 23(e)(3); and (D) [t]he proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Subparagraphs (a) and (b) of Rule 23 address the "procedural fairness" of the settlement, while subparagraphs (c) and (d) address "substantive fairness." *See* Rule 23 (e)(2) Adv. Comm. Notes to 2018 Amends.

Committee Notes to the amended rule are clear that the factors enumerated in the rule are not intended to displace those established by the circuit courts. *See* Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018 Amends. Accordingly, the factors considered by the Third Circuit are consistent with the new Rule 23(e)(2) factors, and continue to advise district courts to assess the fairness, reasonableness, and adequacy of a settlement by applying the factors articulated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) (the "*Girsh* factors"); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019). These are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. "These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair." *Somogyi v. Freedom Mortg. Corp.*, 2020 WL 6146875, at *5 (D.N.J. Oct. 20, 2020).

In addition, "[w]here applicable the permissive and non-exhaustive *Prudential* factors are also relevant to evaluating the parties' settlement." *Id.* (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998)). The *Prudential* factors are "(1) the maturity of the underlying substantive issues . . . the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results

27

achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). Finally, the Court may consider "the degree of direct benefit provided to the class." *In re Baby Prod. Antitrust Litig.*, 708 F. 3d 163, 174 (3d Cir. 2013).

      1.      **The Relevant *Girsh* Factors Support Approval of the Settlement**

      a.      **The Complexity, Expense, and Likely Duration of the Litigation**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 2019 WL 4645331, at *12 (E.D. Pa. Sept. 24, 2019) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004)). This factor aligns with the Third Circuit's favorable treatment of class action settlements because "substantial judicial resources can be conserved by avoiding formal litigation" and the parties can "avoid[] the costs and risks of a lengthy and complex trial." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The economic gains from a settlement "multiply when settlement also avoids the costs of litigating class status— often a complex litigation within itself." *Id.* at 784.

Continuing to litigate this matter would be extremely complex and expensive. For over two years and across more than a dozen Related Actions, Monsanto has raised multiple legal and factual defenses that, barring a settlement, will require discovery, depositions, briefing, and other costly and time-consuming pretrial efforts. Moving to trial would involve expert discovery and motion practice on complex scientific issues and implicate a decades-long scientific and regulatory

record spanning hundreds of studies and millions of pages.  Moreover, there would likely be a vigorous dispute over class certification.  And, because there is every reason to believe that, barring a settlement, Monsanto would continue to vigorously defend against Plaintiffs' claims, a long and costly trial on the merits, followed by appeals, would be likely.  In addition, Retailers of the Products would also continue to be subject to suits, discovery, and lengthy appeals (including the appeal in *Weeks II*, currently pending in the Ninth Circuit).  In light of the substantial risk of costly, complex, and time-consuming litigation, this factor counsels in favor of approval of the Settlement Agreement.

> **b.**      **The Reaction of the Potential Class Members to the Settlement**

Class notice has not yet been issued, so the Court cannot at this point measure the number of objectors (if any) to gauge the reaction of the class.  But the Plaintiffs' support for the proposed Settlement Agreement is a preliminary indicator of its fairness.

> **c.**      **The Stage of the Proceedings and the Amount of Discovery Completed**

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F. 3d at 537 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.2001)) (internal quotation marks omitted).  Class Counsel has aggressively pressed claims substantially similar to this case for more than two years across more than a dozen Related Actions.  Here, the parties have engaged in informal discovery and had available significant formal discovery produced in the related *Ezcurra* and *Weeks* matters.  That discovery includes Plaintiffs' preparation of an expert report, responses to dozens of interrogatories, and Monsanto's production of thousands of pages of documents.  In addition, extensive discovery information produced in ongoing personal litigation is available

online. *See* Baum Hedlund, *Monsanto Papers*, https://www.baumhedlundlaw.com/toxic-tort-law/monsanto-roundup-lawsuit/monsanto-secret-documents/ (last visited June 8, 2021); *see also* Environmental Protection Agency, *Glyphosate Registration Review Docket*, https://www.regulations.gov/docket/EPA-HQ-OPP-2009-0361 (last visited June 8, 2021).

Further, the Settlement Agreement was reached only after Monsanto successfully moved to dismiss two of the Related Actions and subsequent appeals were filed. Thus, the case is sufficiently well-developed and Class Counsel was well-versed in the merits of Plaintiffs' claims when the Settlement Agreement was negotiated. These circumstances are akin to those in *In re Warfarin*, in which litigation had been "pursued by class counsel on several fronts for over three years" through four separate federal actions and at least six state actions before settlement negotiations commenced. *Id*. at 537. Just as the Third Circuit found in *In re Warfarin*, in such circumstances, the third factor weighs in favor of approving the Settlement Agreement. *See id*. ("[W]e agree that this factor strongly favors approval of the settlement.").

### d.     The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Id*. (citing *In re Cendant*, 264 F.3d at 237-39). Here, although Plaintiff believes he has a strong case on the merits—illustrated by, among other things, his Counsel's aggressive prosecution of his claims in this and the Related Actions—Plaintiff recognizes that there are obstacles to succeeding on his claims, evidenced by Monsanto's successful motion to dismiss in the *Ezcurra* action, among others.

Plaintiff also recognizes that he faces other potential hurdles in succeeding on the merits. EPA has approved product labels that do not include any statements about any alleged potential for Roundup® products to cause cancer and repeatedly concluded that the products in fact do not

pose any unreasonable risks to human health.  Monsanto has argued throughout the course of the litigation that the EPA-approved Roundup® labels are accurate and in no way misleading. Monsanto and Retailers in the Related Cases have also argued, with mixed success, in the Related Actions and other cases that claims such as Plaintiffs' are preempted by federal law.  *Compare Weeks*, 2:19-cv-06780, Dkt. 65 (declining to dismiss the complaint on preemption grounds), *with Carson v. Monsanto*, 4:17-cv-237 (S.D. Ga.), Dkt. 49 (dismissing claims against Monsanto as preempted under FIFRA).  Monsanto's preemption argument is before the Eleventh Circuit, and the Ninth Circuit's recent decision is likely to proceed to the Supreme Court.  *See* Opinion, *Hardeman v. Monsanto* (May 14, 2021) (Nos. 19-16636, 19-16708); Appellee's Brief, *Ezcurra v. Monsanto* (11th Cir. Jan. 28, 2021) (No. 20-13341-A).  Plaintiff recognizes the chance that Monsanto may successfully raise the same arguments in this case, eliminating Plaintiffs' claim. Plaintiff also recognizes that Monsanto is likely to raise arguments similar to the successful arguments in *Nat'l Ass'n of Wheat Growers v. Becerra*, in which the court held that California's state label warning requirement under Proposition 65 violated the First Amendment.  468 F. Supp. 3d 1247, 1265 (E.D. Cal. 2020).

The parties also dispute damages.  Monsanto asserts that there is no statistically significant price premium associated with the absence of warning language about a potential risk of cancer on Roundup® product labels.  Decl. of Kristina Shampanier, Ph.D. ¶ 11.  Plaintiffs' damages calculations, on the other hand, support a price premium of 31 percent.  Decl. of D.C. Sharp, Ph.D. ¶ 6.  Continued litigation would necessarily mean additional expenditure and uncertainty in resolving the proper measure of damages, including the risk that Monsanto's damages estimate would prevail—resulting in a far smaller recovery (if any) than that provided for in the proposed settlement.

31

The risks of establishing liability and damages are thus significant. In contrast, the Settlement Agreement guarantees that Monsanto will pay a minimum of $23 million (and up to $45 million) to settle the claims of the Settlement Class. The fourth and fifth *Girsh* factors therefore weigh in favor of approving the Settlement Agreement.

### e.     The Risks of Maintaining Class Action Status Through Trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial" because the "prospects for obtaining certification have a great impact on the range of recovery" that Plaintiff can expect to get through a class action. *Id*. (quoting *In re Gen. Motors*, 55 F.3d at 817). While, for the reasons stated above, Plaintiff believes this case is appropriate for class action treatment, there are undeniable risks to obtaining and maintaining class action status through trial that the Settlement Agreement removes.

For instance, the complaint pleads a putative nationwide class under the Delaware Consumer Fraud Act (DFCA). It is not certain that such a nationwide class could be certified based on the DFCA, because Monsanto would argue a nationwide class would necessarily contain many individuals whose claims are not subject to the DFCA and courts in the Third Circuit have declined to certify nationwide classes based on the DFCA on the ground that choice-of-law principles require the Court to apply the law of the state where purchases were made. *See Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 (D. Del. 2012) (denying certification under DCFA as to consumers in California because of material conflict between Delaware and California law).[15] Instead, other consumers may bring single-state claims under other states' laws, which could itself create issues of predominance due to the need to apply the law of every state and because some states' laws require proof of reliance, which is typically considered an individualized question

---

[15] Monsanto would make similar arguments as to Plaintiffs' breach-of-warranty claim.

requiring case-by-case determinations.  Moreover, Monsanto would argue that any such single-state classes are themselves inappropriate for certification based on individualized issues implicated by state law.[16]  These risks are real, and even though Class Counsel believes them to be surmountable, the risks plainly counsel in favor of approving the Settlement Agreement.

### f.       The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor does not weigh either in favor of or against approval of the Settlement Agreement.  Given Monsanto's size and recent acquisition by prominent multi-national corporation Bayer AG, there is no indication that Monsanto would be unable to withstand a greater judgment.  While Monsanto's "total resources far exceed the settlement amount," the "fact that [Monsanto] could afford to pay more does not mean that it is obligated to pay any more than what [Plaintiff] [is] entitled to under the theories of liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.

In this case, Plaintiff asserted that he "paid a price premium for the [Roundup®] Product given Roundup's potential carcinogenicity was undisclosed" and that, "but for Defendant's omissions, the actual price Plaintiff and Class Members paid would have and should have been less."  DI 14 ¶¶ 109, 110.  On this theory, Plaintiff could only hope to recover the premium he allegedly paid above the purchase price.  Class Counsel and Monsanto have agreed to a settlement that provides Authorized Claimants' 20 percent of the average retail price of the purchased product, an amount that approaches Plaintiffs' price premium calculation of 31 percent and that is far in

---

[16] That the *Tomlinson* action certified a class of Missouri purchasers under Missouri law does not negate the fairness of the settlement here.  Monsanto is currently challenging that decision by every available avenue and, even if that decision stood, Monsanto would later move to decertify the class.  Regardless, the parties here contemplated that some state classes might be certified in other actions in negotiating the settlement terms, and any Missouri Class Members who would prefer not to join this settlement, and take their chances with further litigation and appeals in Missouri state court, are free to opt out of the Settlement.

excess of the non–statistically significant 1.5 percent price premium proffered by Monsanto's expert (which itself was not statistically significant).  Thus, Monsanto's ability to withstand a greater judgment has little bearing on the fairness of this settlement.  *See In re Warfarin*, 391 F.3d at 538.

> ### g.     The Range of Reasonableness of the Settlement Fund in Light of the Best-Possible Recovery and in Light of All the Attendant Risks of Litigation

The last two *Girsh* factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *NFL Players*, 821 F.3d at 440 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538).  At the preliminary approval stage, the Court need only find that the proposed settlement is "in the range of fair and reasonable." *See Spark v. MBNA Corp.*, 48 F. App'x 385, 387-88 (3d Cir. 2002).  Here, each Authorized Claimant is eligible to receive approximately 20 percent of the average retail price for each unit purchased, which approaches Plaintiffs' best-case damages estimate and is well in *excess* of Monsanto's estimate of damages.  In other words, the payments to the Class under the terms of the Settlement are not only "reasonable[]," but approach "the best possible recovery" that Plaintiff could achieve at trial.  *NFL Players*, 821 F.3d at 440. The risks of trial make very little sense under these circumstances.  Thus, the proposed Settlement Agreement is squarely "in the range of fair and reasonable," and the last two *Girsh* factors counsel in favor of approving the Settlement Agreement.

> ### 2.     The *Prudential* and Direct Benefit (*Baby Products*) Considerations Favor Approval

In addition to the *Girsh* factors, the Third Circuit also requires that a district court "apply[] the *Prudential* factors where applicable; and . . . consider[] 'the degree of direct benefit provided to the class[.]'" *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 323 (3d

Cir. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).  The

*Prudential* factors are permissive and non-exhaustive such that only those relevant to the litigation

need be addressed.  *Baby Prods.*, 708 F.3d at 174.  The *Prudential* factors include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
>
> (2) the existence and probable outcome of claims by other classes and subclasses;
>
> (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
>
> (4) whether class or subclass members are accorded the right to opt-out of the settlement;
>
> (5) whether any provisions for attorneys' fees are reasonable; and
>
> (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Google Inc.*, 934 F.3d at 322 n.3.  In considering the direct benefits provided to the class, the

court may take into account "the number of individual awards compared to both the number of

claims and the estimated number of class members, the size of the individual awards compared to

claimants' estimated damages, and the claims process used to determine individual awards."  *Id.*

at 329 (quoting *Baby Prods.*, 708 F.3d at 174).  As demonstrated below, the applicable

considerations also weigh in favor of approving the Settlement Agreement.

> **a.      The maturity of the underlying substantive issues and related factors bearing on the probable outcome of a trial favors approval**

Before negotiating the Settlement Agreement, Class Counsel filed multiple Related Actions

and responded to multiple motions to dismiss, allowing them to gain a significant understanding

of the strengths and weaknesses of their case.  Class Counsel also had the benefit of a massive, publicly available scientific and regulatory record, significant discovery from personal-injury litigation that is publicly available, and meaningful discovery through certain of the Related Actions, again bolstering their knowledge of the merits of the case.  As explained above, though Class Counsel is confident in the strength of Plaintiffs' claims, they also recognize from their substantial experience from prosecuting this case and the Related Actions that a trial on the merits carries significant risks.  Moreover, the analysis and extensive negotiations resulting in the Settlement Agreement were conducted at arm's length by a retired federal magistrate with significant experience in complex, class action litigation.  Thus, the maturity of the underlying substantive issues favors approval of the settlements.

> **b.**     **Class Members have the right to opt-out of the Settlements**

The proposed Settlement Agreement provides a 120-day window in which Class Members who do not wish to participate may opt out of and be excluded from the Settlement Agreement. Accordingly, this factor weighs in favor of the Settlement Agreement.

> **c.**     **The procedure for processing individual claims under the Settlements is fair and reasonable**

The procedure for filing a claim is fair and reasonable.  The Claim Form will be available on the Settlement Website and can be completed and submitted online.  The form will also be mailed to those Class Members who request it, either by phone or in writing.  And those Class Members may submit their form by mail.  Class Members need only provide valid proof of purchase or an affirmation of the identity and quantity of the Products purchased.[17]  The Claims Administrator will begin making payments to claimants 30 calendar days after the effective date

---

[17] Claims based on affirmation alone are limited to a maximum allowance of one per year or partial year of the Class Period, with some limited exception due to the potential for fraud.

of the settlement.  This straightforward process—which does not require proof of purchase—is fair and reasonable.

Rule 23(e)(2)(D) concerns "inequitable treatment of some class members vis-à-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Adv. Comm. Notes to Rule 23.  None of those concerns is present here.

Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award.  Under the Agreement, each Class Member can submit a claim for approximately 20 percent of the average retail price of the Roundup® Products they purchased, regardless of the amount actually paid and without providing any proof of purchase.  Claims may increase or decrease *pro rata*, which will ensure all Class Members are treated equally if there is insufficient or an overage of Settlement Funds after the other expenses are paid.  *Id.* ¶¶ E.2, E.3.  Overall, this approach provides claimants the ability to obtain a payment commensurate with their potential losses, as compared to other Class Members. This structure is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."

The Settlement, which allows Plaintiffs to apply for service awards of up to $5,000 each, does not improperly grant them preferential treatment.  Rather, it is an appropriate amount to compensate them for their time and dedication to the case, as well as for the risks they undertook in bringing this Action.  In this District, service awards between $1,000 and $10,000 are common, and $5,000 awards are typical.  *See, e.g., Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013), at *40 (approving $6,000 and $5,000 awards); *Fitzgerald v.*

*Gann Law Books*, 2014 U.S. Dist. LEXIS 174567, at *15-16 (D.N.J. Dec. 7, 2014) (approving $5,000 award in a TCPA case and noting plaintiffs' duties with respect to this case were not "particularly onerous").

### d.    The Degree of Direct Benefit Provided to the Class

The final consideration in the Third Circuit's framework for addressing the fairness and reasonableness is the degree of direct benefit provided to the class. *In re Google*, 934 F. 3d at 329. This inquiry focuses on the actual benefit to class members, whether claimants will be undercompensated as a result of the claims process used, and whether the claims process results in actual distribution of the settlement funds to class members. *Baby Prods.*, 708 F.3d at 174; *see also In Re Comcast*, 2018 WL 4252463, at *16-17.

Class Members stand to recover nearly *two-thirds* of the damages they claim according to Dr. Sharp's analysis that Roundup® product prices would have been approximately 31 percent lower but for the Monsanto's alleged omissions. The direct benefit to the Class Members is fair and obvious, especially in light of Monsanto's assertion and expert's opinion that there is no statistically significant price premium at all.

Here, the Settlement Agreement establishes a $23 million "Floor Amount" and a $45 million "Ceiling Amount," from which all settlement costs will be paid (including administration expenses, Class Counsel's expenses and fees, service awards to Class Representatives, and Class Member Claims). If the total amount to be paid by Monsanto does not meet the Floor Amount, payments to Authorized Claimants will be adjusted upwards on a pro rata basis to the extent necessary to exhaust the Floor Amount. Thus, at a minimum, the net of the $23 million Floor Amount will directly benefit class members.

## III.    The Notices and Notice Plan Should Be Approved

The Notice Plan (*see generally* Schwartz Decl.) is the best notice practicable, *see* Fed. R.

Civ. P. 23(c)(2)(B), because it was designed to target Class Members and reach at least 80 percent of them an average of 2.24 times each.  *Id.*  The proposed Notice Plan includes multifaceted methods of notice, including (1) print media; (2) online display; (3) social media; (4) online video; (5) television; (6) digital newsletters; (7) search advertising; (8) third-party class-action websites; (9) direct notice via email to millions of likely purchasers of the Products; (10) a national press release; (11) a toll-free settlement hotline; and (12) a settlement website. *Id.* ¶ 13.  The Publication Notice (a short-form notice) and Class Action Settlement Notice (a long-form notice) (collectively, the "Notices") that will be distributed as part of the Notice Plan are designed to inform Class Members about the Settlement, are presented in plain language, are designed to be notice by members of the Settlement Class, and conform to the standards set forth in the Federal Judicial Center's 2010 *Judges Class Action Notice and Claim Process Checklist and Plain Language Guide*. *Id.* ¶¶ 10-12 & Exs. C-D.  The proposed Notices are proper because they contain "sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *Baby Prods.*, 708 F.3d at 180.

## CONCLUSION

With the consent of Defendant Monsanto, Plaintiff respectfully requests that the Court issue an Order substantially in the form of the Proposed Order submitted herewith (1) preliminarily certifying the Settlement Class and appointing the named Plaintiffs and their counsel as Class Representatives and Class Counsel, respectively; (2) preliminarily approving the proposed Settlement; (3) approving the Class Notice and Notice Plan, and directing that Class Notice be disseminated pursuant to the Notice Plan; and (4) setting a fairness hearing and other necessary dates in connection with Final Approval of the Settlement.

Dated: June 14, 2021

/s/ Chandra J. Williams
William J. Rhodunda, Jr. (#2774)
Chandra J. Williams (#4907)
**RHODUNDA WILLIAMS &
KONDRASCHOW**
Brandywine Plaza West
1521 Concord Pike, Suite 205
Wilmington, DE 19803
Bill@rawlaw.com
Chandra@rawlaw.com


Gillian L. Wade (admitted pro hac vice)
Marc A. Castaneda (admitted pro hac vice)
Sara D. Avila (admitted pro hac vice)
**MILSTEIN, JACKSON,
FAIRCHILD & WADE, LLP**
10990 Wilshire Boulevard, 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com
savila@mjfwlaw.com

*Counsel for Plaintiffs*

*Appendix A – Related Actions*

| Case Caption | Date Filed | Date Dismissed | Notes |
|---|---|---|---|
| *Cases Pending in Federal Court* | | | |
| *Ezcurra v. Monsanto*, No. 9:20-cv-80524 (S.D. Fla.) | Feb. 19, 2020 | Pending on appeal | Monsanto removed to federal court on March 27, 2020, and the parties commenced discovery on May 4, 2020. The parties exchanged written discovery during the summer. On August 6, 2020, the court granted Monsanto's motion to dismiss.  Plaintiff has appealed to the U.S. Court of Appeals for the Eleventh Circuit, where the parties' briefing is currently under consideration. |
| *Weeks v. Home Depot*, No. 2:19-cv-6780 (C.D. Cal.) | Aug. 5, 2019 | Pending on appeal | Following a comprehensive meet and confer as required by C.D. Cal. LR-7.3, but prior to any motion practice from Home Depot, plaintiffs filed an amended complaint on November 22, 2019, which Home Depot moved to dismiss on December 12, 2019. Plaintiffs filed an opposition on January 9, 2020 and the court denied Home Depot's motion to dismiss without prejudice on January 21. Home Depot then filed a renewed motion to dismiss on February 3, 2020, which the court granted in part with leave to amend, and denied in part, with prejudice, on September 18, 2020. Following this ruling, the case was transferred to a new judge. Plaintiffs filed a second amended complaint on October 2, 2020, and Home Depot moved to dismiss two weeks later on October 16.  On December 17, 2020 the court granted Home Depot's motion and dismissed the case. |

*Appendix A – Related Actions*

| | | | Plaintiffs appealed to the U.S. Court of Appeals for the Ninth Circuit on January 12, 2021. |
|---|---|---|---|
| *Cases Pending in State Court* | | | |
| *Lamerson v. Walmart Stores, Inc*., No. 50-2019-CC-009139 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | July 15, 2019 | Pending | Walmart removed to federal court on August 16, 2019. The court immediately undertook a *sua sponte* review of the record and ordered remand on August 23, 2019. Walmart sought reconsideration, which the court denied on March 5, 2020. |
| *Shelly v. Target Corp*., No. 50-2019-CC-010718 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | Aug. 14, 2019 | Pending | Target removed to federal court on September 5, 2019, and plaintiffs moved to remand on the same day. The parties filed responsive briefing and on September 24, 2019, the court granted remand. No subsequent motion practice has occurred. |
| *Biddle v. Lowe's Home Centers LLC*, No. 50-2019-CC-011405 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | Aug. 27, 2019 | Pending | Lowe's removed to federal court on September 9, 2019 and plaintiff moved for remand on October 3, 2019. The next day, Lowe's filed its answer to the complaint. On October 31, 2019, the court remanded the case to state court. No subsequent motion practice has occurred. |
| *Morley v. Ace Hardware Corp*., No. CONO-19-010648 (Cty. Ct. 17th Cir. In and for Broward Cty., Fla.) | Sept. 6, 2019 | Pending | Ace removed to federal court on October 12, 2019, and plaintiffs moved for remand on October 15. On November 8, 2019, the court remanded the case to state court. No subsequent motion practice has occurred. |
| *Dismissed Cases* | | | |
| *Fagundes v. The Home Depot*, No. 0:20-cv-61035 (S.D. Fla.) | Mar. 21, 2020 | July 28, 2020 | Complaint initially filed in Florida state court, and Home Depot removed to the Southern District of Florida on May 26, 2020. The parties briefed removal and remand arguments |

*Appendix A – Related Actions*

| | | | in June of 2020.  Prior to the issuance of an order on the issue of remand, Home Depot filed its motion to dismiss the complaint on June 30, 2020. Plaintiff voluntarily dismissed the case on July 28. |
|---|---|---|---|
| *Weeks et al v. Lowe's Home Centers, LLC*, No. 2:19-cv-06828 (C.D. Cal.) | Aug. 6, 2019 | Sept. 19, 2019 | Plaintiffs voluntarily dismissed the case on September 19, 2019. |
| *Jewell et al v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.) | Aug. 12, 2019 | May 27, 2020 | Walmart filed its motion to dismiss the complaint on February 10, 2020.  Two weeks later, plaintiffs sought and received leave to file a Second Amended Complaint, which it filed on April 27, 2020.  Walmart moved to dismiss the Second Amended Complaint on May 8, 2020. Plaintiffs moved for voluntary dismissal, which was granted on May 27, 2020. |
| *Boyette et al v. Lowe's Companies, Inc.*, No. 4:19-cv-04119 (W.D. Ark.) | Sept. 13, 2019 | May 20, 2020 | Lowe's filed its answer on December 30, 2019.  Plaintiffs subsequently amended the complaint on January 17, 2020. On May 19, 2020, plaintiffs voluntarily dismissed the amended complaint. |
| *Taylor et al v. Costco Wholesale Corp.*, No. 20-cv-00655 (E.D. Cal.) | Mar. 27, 2020 | Mar. 2, 2021 | Costco moved to dismiss the complaint on May 21, 2020, which was granted with leave to amend.  Plaintiffs then filed an amended complaint that Costco again moved to dismiss.  Plaintiffs voluntarily dismissed the case on March 1, 2021, shortly after the parties' mediation and while the final terms of the settlement were being negotiated. |
| *Hanna et al v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) | May 22, 2020 | Jan. 8, 2021 | Plaintiffs filed an amended complaint prior to any significant motion practice |

*Appendix A – Related Actions*

| | | | |
|---|---|---|---|
| | | | from Walmart.  Walmart filed a motion to dismiss on July 29, 2020 that the court granted on November 5, 2020 with leave to amend.  Plaintiffs filed a second amended complaint on November 25, 2020 that Walmart moved to dismiss on December 9, 2020.  On January 8, plaintiffs voluntarily dismissed the case and re-filed in state court in January 2021. |
| *Williams et al v. Lowe's Home Centers, LLC*, No. 5:20-cv-01356 (C.D. Cal.) | July 6, 2020 | Feb. 19, 2021 | Lowe's moved to dismiss plaintiff's complaint on October 29, 2020.  Prior to the court's ruling on Lowes' motion, plaintiffs filed an amended complaint on November 19, 2020, that Lowe's moved to dismiss on December 3, 2020.  Plaintiffs filed an opposition to Lowes' motion to dismiss on February 1, 2021, Lowe's opposed on February 8, then voluntarily dismissed the case on February 19, 2021, shortly after the parties' mediation and while the final terms of the settlement were being negotiated. |
| *Waters v. Home Depot USA, Inc.*, No. 50-2019-CC-009140 (Cty. Ct. 15th Cir. In and for Palm Beach Cty., Fla.) | July 15, 2019 | Nov. 7, 2019 | Home Depot removed the case to federal court on August 19, 2019 and Plaintiffs moved for remand on August 27, 2019.  While the briefing on remand was under consideration before the court, Home Depot filed a motion to dismiss on October 25, 2019.  Plaintiffs voluntarily dismissed the case on November 7, 2019. |
| *Hanna et al v. Walmart, Inc.*, CIV SB 2100789 (Sup. Ct. Cal. for San | Jan. 12, 2021 | April 14, 2021 | Plaintiffs filed the complaint on January 12, 2021.  No subsequent motion practice occurred, and the complaint |

*Appendix A – Related Actions*

| | | | |
|---|---|---|---|
| Bernardino) (filed Jan. 12, 2021) | | | was voluntarily dismissed April 14, 2021, shortly after the parties' mediation and while the final terms of the settlement were being negotiated.. |
| *Gregorio et al v. Home Depot U.S.A., Inc.*, No. CACE-21-002428 (Cty. Ct. 17th Cir. In and for Broward Cty., Fla.) | Feb. 4, 2021 | March 2, 2021 | Plaintiffs filed on February 4, 2021 and served Home Depot on February 10.  Plaintiffs voluntarily dismissed the case after it was removed to federal court.. |