# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SCOTT GILMORE, et al.,

     Plaintiffs,

vs.

MONSANTO COMPANY,

     Defendant.

C.A. No. 20-1085-MN

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## TOMLINSON PLAINTIFFS' MOTION TO INTERVENE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ....................................................................................................1

II.   RELEVANT BACKGROUND ................................................................................1

      A.   The Related Actions Contributed Significantly to the Settlement. ...............2

           1.   The work completed in *Ezcurra* greatly benefited the proposed class. ...............2

           2.   The actions against retailers played a significant role in settlement. ....................3

      B.   Plaintiff Gilmore is a dedicated proposed class representative who strategically brought nationwide claims in Delaware. ....................................................................4

      C.   There can be no doubt the mediated negotiations were conducted at arm's-length. .....5

III.  INTERVENTION IS IMPERMISSIBLE, UNWARRANTED AND PREJUDICIAL. .........6

      A.   Proposed Intervenors cannot meet their heavy burden to intervene as of right. ...........6

           1.   Legal Standard for intervention as of right .........................................................6

           2.   Proposed Intervenors cannot overcome the adequacy presumption. ...................9

                (a)   Proposed Intervenors cannot show "adversity of interest." .......................11

                (b)   Proposed Intervenors' baseless conjecture falls well short of their burden to establish collusion. ....................................................................14

                (c)   Proposed Intervenors cannot establish "nonfeasance." ...........................18

      B.   Permissive Intervention is unwarranted and prejudicial. ............................................18

IV.   CONCLUSION......................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            ***Page***

*Allen v. Dairy Farmers of Am., Inc.*, 2011 WL 1706778 (D. Vt. May 4, 2011)............................ 10, 20

*Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 249 (D.N.M. 2008).................... 19

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3rd Cir. 2012)......................... 8

*Brennan v. Cmty. Bank, N.A.*, 314 F.R.D. 541, 546 (M.D. Pa. 2016) ........................................... 10, 12

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017)......................................... 5

*By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3rd Cir. 1992) .............................................. 8

*Carr v. Ocwen Loan Svc., LLC*, 2013 WL 12383150, at *3 (N.D. Ga. Nov. 26, 2013) ..................... 10

*Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ....................................................... 3

*City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038 (10th Cir. 1996)........ 19

*Claridge v. N. Am. Power & Gas, LLC*, 2017 WL 3638455 (S.D.N.Y. Aug. 23, 2017).................... 14

*Clark v. Putnam Cty.*, 168 F.3d 458, 460 (11th Cir. 1999)................................................................ 14

*Com. of Pa. v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976) ..................................................................... 13

*Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663 (Del. Super. Ct. Dec. 8, 1994) ..................... 13

*Demarco v. Avalonbay Communities, Inc.* 2016 WL 5934704 (D.N.J. Oct. 12, 2016)................... 6, 19

*Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, 2014 WL 4955259,
(M.D. Pa. Sept. 30, 2014) ................................................................................................................ 15

*Dewey v. Volkswagen AG*, 681 F.3d 170, 187-88 (3d Cir. 2012) ...................................................... 11

*Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524-DMM (S.D. Fla.)......................................................... 2

*Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *9 (D.N.J. Sept. 28, 2018) ....... 7, 10, 19

*Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.)....................................................................... 4

*Holmes v. Gov't of Virgin Islands*, 61 F.R.D. 3, 4 (D.V.I. 1973)........................................................ 18

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) .............................................. 7, 10

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .................................. 20

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)............ 14

*In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 434 (3d Cir. 2016) .......... 7

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ............................................. 11

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) ................. 14

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) ..................................................... 18

*In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *4 (D.D.C. Nov. 23, 1999) ........................... 20

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004)....................................... 9, 13

*James v. Glob. Tel\*Link Corp.*, 2020 WL 6194016, at *4 (D.N.J. Oct. 22, 2020)............................ 11

*John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 656 (2004) ........................................ 12

*Kerr v. Vatterott Educ. Ctrs. Inc*, 439 S.W.3d 802, 814 (Mo. Ct. App. 2014) .................................... 13

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) ........................................................... 6

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361 (3d Cir. 1995).... 7, 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) ............................... 16

*Nicholas v. Saul Stone & Co. LLC*, 1997 U.S. Dist. LEXIS 23821 (D.N.J. Oct. 11, 1997)............... 19

*PA Prison Soc. V. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010) ............................................................... 10

*Rescigno v. Statoil USA Onshore Properties Inc.*, 2021 WL 1549661 (M.D. Pa. Apr. 20, 2021) ...... 16

*Robertson v. Enbridge (U.S.) Inc.*, 2021 WL 2582200 (W.D. Pa. May 28, 2021) .............................. 19

*Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656 (D. Colo. 2018)............................................... 8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)............................. 17

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 2013 WL 5585230 (S.D. Fla. Oct. 9, 2013) ........... 10, 19

*Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 303 (3d Cir. 2011)............................................................... 12

*Taylor v. Costco Wholesale Corporation*, No. 2:20-cv-00655-KJM-DMC)........................................ 4

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017) ............ 14

*Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) ................................................. 7, 8

*Weeks v. Home Depot*, 2:19-cv-06780 FMO (ASx) (C.D. Cal.)............................................................ 3

*Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 627(D.N.J. 1982) ................................................. 19

**Rules**

FED. R. CIV. P. 24 ................................................................................................................ 6, 18

Plaintiffs Scott Gilmore, Julio Ezcurra, James Weeks, Amanda Boyette, Anthony Jewell, Paul Taylor, Sherry Hanna, and Kristy Williams ("Plaintiffs"), submit this memorandum in opposition to Ryan Tomlinson and Carol Richardson's ("Proposed Intervenors") Motion to Intervene (ECF No. 41) ("PI Brief").

## I.      INTRODUCTION

Relying on provably false accusations of "collusion," Proposed Intervenors attempt to block an arm's length, robust settlement, and move to "intervene" in this case at the preliminary approval stage. These efforts are hardly innocuous. Rather, applying the wrong standard and pointing to baseless conjecture, Proposed Intervenors seek to upend the orderly class action approval process established by Rule 23, and most importantly seek to prevent class notice, robbing a national putative class of *their* right to weigh in on the settlement's value in advance of the fairness hearing. The Court should reject Proposed Intervenors' efforts. As they are well aware, Proposed Intervenors have every opportunity to object before final approval, and fall well short of the Third Circuit's standard for intervention at this stage in a class action.

## II.     RELEVANT BACKGROUND

In their Second Amended Complaint ("SAC"), Plaintiffs allege Monsanto Company ("Monsanto") engaged in the marketing, labeling, and sale of its glyphosate-containing Roundup® products (the "Products") without disclosing—on the Roundup® label, on its webpages, on in-store advertisements, and through other means of disclosure—that such products may cause cancer. ECF No. 22 at ¶ 154-56. These allegations are consistent with and nearly identical to the allegations and claims asserted in more than a dozen actions prosecuted by Class Counsel[1]  and

---

[1] Class Counsel means the following attorneys of record in this action: Gillian L. Wade, Sara D. Avila, and Marc A. Castaneda of Milstein, Jackson, Fairchild & Wade, LLP. *See* ECF No. 26-1 at A.16.

Plaintiffs' Counsel[2] in federal and state courts around the country, against both Monsanto and large retailers of the Roundup® Products (the "Related Actions"). Following litigation and discovery in the Related Actions, as well as litigation, mediation, and extensive arm's length negotiations in this action, the parties have agreed to a claims-made settlement pursuant to which Monsanto will establish a fund between $23 million (the "Floor Amount") and $45 million (the "Ceiling Amount") against which Class Members can submit claims for approximately 20 percent of the average retail price of Roundup® Lawn & Garden Products. *See* ECF No. 26-1 at D.1. On June 14, 2021, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and for Certification of the Class for the Purposes of Settlement (ECF No. 24-30) ("MPA") and their Joint Motion to Stay Related Proceedings with Monsanto (ECF No. 32-33).

## A.  The Related Actions Contributed Significantly to the Settlement

Proposed Intervenors' speculative assertions and mischaracterization of the Related Actions are misguided, at best. While Proposed Intervenors cherry-pick docket entries to fit their false "collusion" narrative, they fail to recognize or understand the significant impact the Related Actions had on the proposed nationwide settlement ("Settlement"). The Related Actions, targeting both Monsanto *and* the retailers that sold the Products, involved novel legal theories that were vigorously litigated and contributed significantly to the Settlement in this matter.

### 1.  The work completed in *Ezcurra* greatly benefited the proposed class.

Despite Proposed Intervenors' baseless spin on the events leading up to the Settlement, *Ezcurra v. Monsanto Co.*, No. 9:20-cv-80524-DMM (S.D. Fla.) (filed Feb. 19, 2020) ("*Ezcurra*")

---

[2] Plaintiffs' Counsel means the following additional counsel for Plaintiffs: (1) Rhodunda Williams & Kondraschow, LLC; (2) The Law Offices of Howard Rubinstein; (3) Southern Atlantic Law Group, PLLC; (4) The Casey Law Firm, LLC; (5) Sheehan & Associates, P.C.; and Harrelson Law Firm, P.A. *See* ECF NO. 26-1 at A.42.

played a significant role in bringing about the Settlement.[3] As discussed in the MPA, the parties in *Ezcurra* promptly engaged in discovery following their Rule 26(f) conference, with Monsanto producing thousands of pages of documents (including sales data), and Ezcurra producing his Rule 26(a)(2) expert report measuring class-wide damages under a price premium model. *See* Sharp Supp. Decl. ("Sharp Report"), ECF No. 35. Although the court ultimately granted Monsanto's motion to dismiss, Ezcurra filed an appeal that is fully briefed and pending before the Eleventh Circuit.

In reaching the Settlement, the parties thus had the benefit of the discovery record developed in *Ezcurra,* and briefing the complex issues raised in a similar consumer case.

### 2. The actions against retailers played a significant role in settlement.

Proposed Intervenors also misunderstand and largely ignore the role the Related Actions[4] targeting major retailers of the Products played in reaching the Settlement. Although these cases do not name Monsanto directly, they share the common goal of seeking accountability for the lack of disclosure of the Products' potential carcinogenicity and are based on virtually the same allegations. Proposed Intervenors fail to recognize the tremendous risk this coordinated litigation strategy created for Monsanto by seeking to hold the retailers that sell Roundup liable for selling it to consumers.

Class Counsel and Plaintiffs' counsel performed substantial work in these cases. In *Weeks*

---

[3] Ezcurra sought to represent a Florida class of debit and credit card purchasers of the subject Roundup® products. Ezcurra did *not* limit the class to persons who purchased Roundup® from Home Depot. And the class was limited to debit and credit card purchasers because of the specific ascertainability standard in the Eleventh Circuit. *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ("a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination").

[4] A summary of the other Related Actions is set forth in Appendix A to the MPA. *See* ECF No. 25 at App'x A.

*v. Home Depot*, 2:19-cv-06780 FMO (ASx) (C.D. Cal.) (filed Aug. 8, 2019) ("*Weeks*"), the parties engaged in discovery, including Home Depot's production of tens of thousands of pages of documents in its rolling production, Weeks's responses to Home Depot's lengthy written discovery, and many conferences of counsel regarding discovery disputes. Weeks prevailed on certain issues on Home Depot's second motion to dismiss, with the court finding the case was not expressly or impliedly preempted and that *a retailer could be liable under the Unfair Competition Law for knowingly selling a dangerous product without informing consumers of the dangers*. *Weeks,* 2020 U.S. Dist. LEXIS 188369, at *5-21 (C.D. Cal. Sept. 18, 2020) (allowing Weeks to "conduct discovery with respect to the scope and extent of defendant's knowledge regarding the health risks to consumers posed by Roundup"). Although the case was later dismissed with prejudice, Weeks has appealed and the matter is pending before the Ninth Circuit.

Proposed Intervenors criticize the work done in *Taylor v. Costco Wholesale Corporation*, No. 2:20-cv-00655-KJM-DMC) (E.D. Cal.) (filed Mar. 27, 2020) and *Hanna v. Walmart Inc.*, No. 5:20-cv-01075 (C.D. Cal.) (filed May 22, 2020) because both were also dismissed—however in both cases, plaintiffs were given leave to amend after substantial briefing. Taylor and Hanna thereafter strengthened their allegations and continued litigating until Plaintiffs and Monsanto reached an agreement in principle to settle the case.

### B.    Plaintiff Gilmore is a dedicated proposed class representative who strategically brought nationwide claims in Delaware.

Proposed Intervenors ignore the big picture and detailed procedural history of this matter set forth in the MPA (*see* ECF No. 25 at 7-10), and speciously assert the weakness of *Gilmore* caused Plaintiffs to be more "willing to compromise." First, the fact Gilmore voluntarily dismissed a prior lawsuit against Monsanto in Oregon before pursing the instant case in Delaware does not

render him a weak loser desperate to settle. Although Gilmore did originally file in Oregon (where he purchased Roundup®), the ultimate objective was a forum to pursue nationwide class certification. Indeed, Delaware is a more suitable forum for purposes of certifying a nationwide class because Monsanto is incorporated in Delaware, and the Court has jurisdiction over non-resident class members' claims. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017) ("out-of-state plaintiffs [not prevented] from joining together in a consolidated action in the States that have general jurisdiction over [defendant]"). If anything, the pursuit of his claims in Delaware shows Gilmore's dedication to the case and willingness to pursue the claims he genuinely believes in a jurisdiction where nationwide certification is viable.

Proposed Intervenors' suggestion the DCFA does not apply to Plaintiffs' claims because Plaintiffs purchased Roundup® in states other than Delaware is wrong. The DCFA applies to conduct in Delaware, and Plaintiffs clearly allege Monsanto is incorporated and transacts business in Delaware, and that the material omissions giving rise to Plaintiffs' claims arose, at least in part, in Delaware. ECF No. 22 at ¶¶ 12, 25.

## C.     There can be no doubt the mediated negotiations were conducted at arm's-length.

On February 16, 2021, while Monsanto's motion to dismiss the FAC was pending and the Related Cases had been ongoing for years, the parties conducted a joint mediation before the Honorable Diane M. Welsh of JAMS, a former United States Magistrate Judge and an experienced mediator nationally recognized for her work in complex class actions. ECF No. 27 ¶¶ 2-3. [5] The twelve-hour mediation was at times contentious but ultimately successful, and there can be no

---

[5] Class Counsel and counsel for Monsanto had previously designated Judge Welsh as a private mediator in Ezcurra in May 2020 pursuant to the Southern District of Florida's Local Rules and the court's Pretrial Scheduling Order. See Notice of Mediator Selection (Ezcurra, ECF. No. 25).

question it was conducted at "arm's length".  *See id.* at ¶¶ 9, 10. (the "outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and informed parties and counsel" and Judge Welsh "observed nothing that suggested any collusion or other untoward behavior by counsel for either party.").

## III.  INTERVENTION IS IMPERMISSIBLE, UNWARRANTED AND PREJUDICIAL.

The Court should not permit intervention. Proposed Intervenors fall well short of the 'Intervention of Right' requirements and permissive intervention is both unwarranted and prejudicial. Proposed Intervenors will have every opportunity to present their concerns at the final fairness hearing, as Rule 23 contemplates.

### A.  Proposed Intervenors cannot meet their heavy burden to intervene as of right.

Proposed Intervenors cannot meet their burden with respect to Rule 24(a). Their arguments rely on both an erroneous legal standard and rife speculation.

#### 1.  Legal Standard for intervention as of right

Rule 24 provides that "[o]n timely motion, the court must permit anyone to intervene who…claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). "The Proposed Intervenors bear the burden of proving each element and failure to prove any one of the criteria is sufficient grounds to deny the motion." *Demarco v. Avalonbay Communities, Inc.*, No. 15-628, 2016 WL 5934704, at \*2 (D.N.J. Oct. 12, 2016) (quotations omitted).

Thus, "Rule 24(a)(2) require[s] proof of four elements from the applicant seeking intervention as of right: [(1)] a timely application for leave to intervene; [(2)] a sufficient interest

in the litigation; [(3)] a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and [(4)], inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citations removed).[6]

With respect to adequacy, Proposed Intervenors rely on dicta in a 1971 Supreme Court decision to assert their burden in establishing inadequacy is "minimal" and is satisfied if they can show that representation of their interests "'may be' inadequate." PI Brief at 6 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). This ignores proposed intervention in class actions. In the Third Circuit, "[i]n the class-action context, potential intervenors must overcome a presumption of adequate representation[.]" *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 434 (3d Cir. 2016); see also *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *9 (D.N.J. Sept. 28, 2018) (quoting *In re Cmty. Bank*, 418 F.3d at 315) ("[u]nder Third Circuit law, however, because it is assumed that the absent class member seeking intervention 'has the same ultimate objective as a party to the suit...a presumption arises that its interests are adequately represented.'"). This standard applies irrespective of whether the class has been certified at the time intervention is sought. *Granillo*, 2018 WL 4676057, at *9 fn. 11 (collecting cases).

As one court noted, a proposed intervenor's attempt to supplant the Third Circuit's adequacy presumption with a "*potential* [for interests] to diverge" standard improperly relied on

---

[6] Relying on dicta in *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005), Proposed Intervenors suggest the 'impairment of interest' element is presumptively satisfied in the class action context. PI Brief at 5. However, later authority has confirmed there could be no impairment of interest where class members could opt-out of proposed settlement. *Townes v. Trans Union, LLC*, No. 04-1488-JJF, 2007 U.S. Dist. LEXIS 65452, at *9 (D. Del. Aug. 30, 2007) ("the Court concludes that the presence of the opt-out provision prevents the impairment of any legal interests held by those who may also be part of the proposed putative class"). Such is the case here.

cases—including those cited here by Proposed Intervenors—that never "appl[ied] this [more lenient] standard…in the context of class actions, where class members are assumed to have the same ultimate objective." *Id.* at *10 (distinguishing *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3rd Cir. 1992) (an "establishment clause suit by high school students against school officials"); *see* PI Brief at 6 (citing *Brody*). The same logic applies to Proposed Intervenors' misplaced reliance on *Trbovich* and *Mountain Top*.[7]

Further, proposed intervenors in *Granillo* improperly relied on the same inapposite 'class action' cases cited by Proposed Intervenors here. *Id.* at *11 (distinguishing *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656 (D. Colo. 2018) as applying "a more permissive, out-of-circuit standard for demonstrating inadequacy of representation"; distinguishing *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938 (3rd Cir. 2012) as case "deal[ing] with class members attempting to intervene into non-opt-out classes in which absent class members' interests are more significantly at risk"); *see* PI Brief at 6-7, 9-10, 12 (citing *Ross* and *Benjamin*).

Proposed Intervenors' failure to apply the correct standard is significant, since their

---

[7] *See* PI Brief at 8 fn. 3 (describing *Trbovich* as creating a "minimal burden…mere probability of inadequacy" standard); 6 (quoting *Mountain Top* for proposition that "[t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties"). *Trbovich* was not a class action and dealt with a union members' proposed intervention in a suit by the Secretary of Labor to set aside a union election. *Trbovich*, 404 U.S. at 529. Further, unlike here, where Class Counsel is required by Rule 23 to represent the interests of absent class members, the Supreme Court noted that the Secretary of Labor's statutory directive did not require representation of the union member's interests. *Id.* at 636-37. *Mountain Top* was a non-class action dealing with a condominium association's suit against a builder hired to remediate hurricane damage with proceeds received by the insurance carrier. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 364 (3d Cir. 1995). As part of its remediation plan, the condominium association—in violation of its own bylaws—distributed a portion of the insurance proceeds to condominium owners. *Id.* at 314. The proposed intervenors filed suit challenging the condominium association's distribution plan, and sought intervention in the case against the builder since its settlement might deplete any remaining funds allocated for the reparation of hurricane damage. *Id.* at 316-17.

primary 'evidence' of inadequacy is the parties' adoption of norms and conventions in class action litigation. For example, they argue inadequacy is established in large part by the parties' request for an injunction (relief commonly granted in preliminary approval situations). Elsewhere, they point to the lack of Missouri-specific causes of action (which is hardly atypical in national consumer class settlements)[8] as evidencing inadequacy. These, Proposed Intervenors argue, clear their (erroneous) "'may not' be able to adequately represent" bar for inadequacy. *Id.* But when the Third Circuit's actual presumption of adequacy is applied, it is impossible to reconcile the presumption of adequacy afforded Class Counsel with Proposed Intervenors' arguments that Class Counsel's inadequacy is demonstrated by acts commonly undertaken in class actions, and repeatedly taken by Proposed Intervenors themselves.[9] In short, Proposed Intervenors not only avoid the Third Circuit's presumption of adequacy, but seek to supplant it with a 'presumption of inadequacy' when it comes to class representatives and their attorneys.

### 2. Proposed Intervenors cannot overcome the adequacy presumption.

Proposed Intervenors cannot overcome this Circuit's adequacy presumption, especially with respect to preliminary approval. "In order to overcome the presumption, the proposed intervenors must demonstrate "'adversity of interest, collusion, or nonfeasance on the part of [Plaintiffs].'" *Granillo*, 2018 WL 4676057, at *9 (quoting *In re Cmty. Bank*, 418 F.3d at 315).

The burden is especially difficult to overcome by absent class members at the preliminary

---

[8] In *In re Warfarin Sodium Antitrust Litig.*, the Third Circuit rejected an objection to a nationwide class settlement that "variations in and inconsistencies between the state consumer fraud and antitrust laws of the fifty states defeat the commonality and predominance requirements of Rule 23." 391 F.3d 516, 529 (3d Cir. 2004).

[9] Indeed, what Proposed Intervenors' point to as "collusion" are normal terms of nationwide settlements that their own counsel has advocated for in other cases. *See, e.g. Keil v. Lopez*, No. 16-3159 (8th Cir.), Brief of Plaintiff's-Appellees, at 33-35 (variations in state law do not create intra-class conflicts).

approval stage because such putative "[i]ntervenors, as class members, are not deprived of their ability to protect their interests [where intervention is denied]. Any substantive challenges raised by the intervenors can be addressed, if they so choose, as objections to the settlement." *Brennan v. Cmty. Bank, N.A.*, 314 F.R.D. 541, 546 (M.D. Pa. 2016) (citing *PA Prison Soc. V. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010)). "[P]roposed [absent class member] intervenors are free to opt out of the class settlement[,] have the opportunity to challenge the settlement through such objections at the Final Approval Hearing[, and] have the ability to bring an appeal, should the court approve the settlement." *Id; see also Allen v. Dairy Farmers of Am., Inc.*, No. 09-230, 2011 WL 1706778, at *3 (D. Vt. May 4, 2011) ("[t]o the extent the remaining intervenors believe that Plaintiffs and proposed class counsel cannot adequately represent their interests, they may present their concerns at the court's fairness hearing. They have not demonstrated that, without intervention, they will be unable to protect their interests"); *Granillo*, 2018 WL 4676057, at *10 ("[t]he Proposed Settlement is subject to final approval, so if Proposed Intervenors wish to submit objections, their opportunity to do so has not run out"); *Carr v. Ocwen Loan Svc., LLC*, No. 13-732, 2013 WL 12383150, at *3 (N.D. Ga. Nov. 26, 2013) (denying intervention at preliminary approval stage as "Intervenors may protect their rights by either opting out of the current case and pursuing an individual suit against Defendant, or by objecting to the proposed settlement"); *Saccoccio v. JP Morgan Chase Bank, N.A.*, No. 13-21107, 2013 WL 5585230, at *1 (S.D. Fla. Oct. 9, 2013) (same).

This logic applies here, where the only purported interests Proposed Intervenors seek to protect are already protected by the procedures of this Court. Plaintiff Intervenors are well aware of this, and are merely attempting to prevent notice from going to the putative class, and have the Court apply the higher threshold for final approval to the preliminary approval inquiry, contrary to the clear procedures established by Rule 23.

### (a)     Proposed Intervenors cannot show "adversity of interest."

Proposed Intervenors cannot meet their burden to establish adversity of interest. In class actions, adversity of interest typically occurs where the settlement treats class members differently in a way that creates an adversarial posture between class members. *See, e.g., Dewey v. Volkswagen AG*, 681 F.3d 170, 187-88 (3d Cir. 2012) (finding representative plaintiffs did not adequately represent entire class where different sub-classes had incentives under settlement allocation plan to exclude other plaintiffs from rights to settlement funds). It does not suffice that a subset of the settling class merely believes their particular claims are not given their due weight. *See, e.g., James v. Glob. Tel\*Link Corp*., No. 13-4989, 2020 WL 6194016, at \*4 (D.N.J. Oct. 22, 2020) ("the Court joins in the conclusions reached by other courts in this district that have expressly rejected arguments similar to that raised by Proposed Intervenors here that the potential scope of the release in the Settlement could unfairly prejudice a subset of [settlement class] members and therefore render their interests adverse to those of the named Plaintiffs"). "It is not enough for objectors to point to differences in claims, allocation amounts, or state laws without identifying how such differences demonstrate a conflict of interest." *In re Pet Food Products Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010)).

Here, Proposed Intervenors cannot establish adversity of interest. The national settlement and Missouri case both seek economic damages related to the marketing of Roundup products. Further, the Proposed Intervenors are treated equitably under the Settlement Agreement; they are members of the national class entitled to the same benefits as other absent Class Members.

Proposed Intervenors make a number of unconvincing or irrelevant arguments to support a finding of adversity of interest. These include: (1) their opposition to the injunction (PI Brief at 7); (2) the Missouri Class' claims under the MMPA (*id.* at 8, 9); (3) the Missouri Class' claim for punitive damages (*id.* at 12, 14); (4) Plaintiffs' purported greater willingness to compromise (*id.*

11

at 8-12); and (5) the expanded (national) settlement class definition (*id.* at 9-10).

As explained in the Memorandum in Support of Joint Motion to Stay Related Proceedings, (ECF No. 33 at 1-2), the injunction sought is commonplace in preliminary approval motions. Proposed Intervenors offer no argument as to why the injunction constitutes an adversity of interest, beyond stating that they "obviously opposed being enjoined." However, the pursuit of a common procedural mechanism meant to streamline settlement for the Class is hardly evidence of an adverse interest, and it is far from obvious as to why a party to a lawsuit would strive to continue costly and time-consuming litigation after a settlement has been reached.

With respect to the MMPA claims and punitive damages, courts have found that similar arguments by proposed "[i]ntervenors [that] the absence of [certain] claims reduces the potential benefit of the settlement and causes injury to the class members" is just is an "attempt…to object to and demonstrate dissatisfaction with terms of the settlement." *Brennan*, 314 F.R.D. at 545. As noted above, these issues do not suffice to find adverse interest. The Third Circuit has held that variations in state law do not preclude certification of a settlement class. *Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 303 (3d Cir. 2011) ("[W]e can find no persuasive authority for deeming the certification of a class for settlement purposes improper based on differences in state law.") Indeed, there could be no adversity of interest where "all putative members experienced injury caused by [defendant], all sought recovery for overpayment caused by allegedly anticompetitive behavior, and all shared common interests in establishing damages." *Id.* at 327. Further, adversity of interest does not exist where the interests between a party and would-be intervenor "is, at most, one of degree and not of kind." *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 656 (2004), aff'd sub nom., 143 F. App'x 317 (Fed. Cir. 2005).

The suggestion that consumers in Missouri are entitled to a full refund under the MMPA

is perplexing, as both the DCFA and the MMPA limit recovery to the difference between a product's actual and represented value.[10] Here, Plaintiffs conducted a full damages analysis to determine the value of Roundup considering its undisclosed carcinogenicity (*see* Sharp Report, ECF No. 35), and accounted for the actual value of Roundup as a weedkiller.  There cannot be a serious argument under Missouri or Delaware law that Roundup has *no* value, rendering a full refund appropriate. In reality, the calculation of damages, under either state's law, must account for some value for Roundup, and is essentially the same. Moreover, the possibility that punitive damages *might* be awarded at a trial in Missouri is not relevant to the determination of the fairness of a settlement and certainly does not bear on Class Counsel's adequacy. *In re Warfarin,* 212 F.R.D. at 257.

Regarding their fourth argument, Proposed Intervenors speculate that Plaintiffs were under 'pressure' to settle, based merely on the procedural posturing of various cases. But a party's theoretical pressure to settle does not mean its interests are adverse to that of another party. Even if Plaintiffs were unsuccessful in the pursuit of certain claims, it does not follow that their interests in this litigation were *adverse* to those of Proposed Intervenors. As the Third Circuit has stated, "[w]e also reject any implied contention that representation becomes inadequate whenever the representative is unsuccessful in urging a position: adequate representation may or may not be successful representation." *Com. of Pa. v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976). The three (non-Third Circuit) cases cited by Proposed Intervenors do nothing to advance (and in some instances undermine) their argument. [11] PI Brief at 8, 12.

---

[10] *Kerr v. Vatterott Educ. Ctrs. Inc*, 439 S.W.3d 802, 814 (Mo. Ct. App. 2014); *Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663, at *4 (Del. Super. Ct. Dec. 8, 1994).

[11] *Literary Works* involved the rejection of *final* approval based (in part) on objections as to adequacy filed prior to the final approval hearing, not by any intervening party (there were none)

Nor is the national class definition evidence of adversity of interest, as class settlements often release claims broader than those originally asserted. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) ("a class settlement can bar later claims based on the allegations underlying the claims in the settled class action[,] . . . even [if] the precluded claim was not presented, and could not have been presented, in the class action itself"). Under Proposed Intervenors' logic, this would render all national settlements originating as individual state class claims (which is the case in almost all national settlements) *per se* adversarial to the interest of currently filed cases. The two cases cited by Proposed Intervenors—*Ross* and *Claridge*—hail from non-Third Circuit jurisdictions (with more permissive inadequacy showings) and are distinguishable or irrelevant.[12] PI Brief at 9-10.

### (b) Proposed Intervenors' baseless conjecture falls well short of their burden to establish collusion.

Proposed Intervenors' outrageous allegations of collusion are wholly meritless, rife with

---

at the preliminary approval stage. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). *Clark* (a non-class action) involved the putative intervention of black voters in an action by white voters challenging a court ordered voting plan meant to protect black voters. *Clark v. Putnam Cty.*, 168 F.3d 458, 460 (11th Cir. 1999). Finally, the intervenors in *Tech. Training* met the Eleventh Circuit's 'minimal [inadequacy] burden' by providing email evidence that settling counsel "deliberately underbid the [intervenor] movants in an effort to collect attorney's fees." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). Here, the inadequacy standard is higher, there is a complete lack of evidence beyond conjecture, and there is no competing settlement offer by Proposed Intervenors.

[12] *Ross* involved a Fair Debt Collection Practices Act case, which provides $1000 statutory damages wherein, "for class actions, statutory damages are capped at 1% of the debt collector's net worth or $500,000, whichever is less." *Ross*, 323 F.R.D. at 658. Thus, when the putative Colorado-only class was expanded to a national settlement class, the cap remained the same, "thereby diluting the original Colorado class members' potential recovery[.]" *Id.* at 660.In *Claridge*, New York plaintiffs alleged that individuals were overcharged for electricity. *Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, 2017 WL 3638455, at *1 (S.D.N.Y. Aug. 23, 2017). In denying preliminary approval of a national class, the Court found there was no showing of typicality and commonality in large part due to the novel and state-specific issue of whether a state agency existed which "had primary jurisdiction over ratepayers' claims[.]" *Id.* Neither of these instances are analogous to the situation at hand, a straightforward national consumer settlement.

speculation, contradicted by record evidence, and contrary to reason. Such baseless claims demonstrate a lack of candor to the Court. Plaintiffs have pursued this matter in various actions for over two years and negotiated the Settlement at arms-length and with the assistance of a neutral and highly qualified mediator. Declaration of Gillian L. Wade in Support of MPA, ECF No. 26 at ¶ 31. Proposed Intervenors fall woefully short of meeting their burden of establishing collusion.

As a general principle, "the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." NEWBERG ON CLASS ACTIONS § 11.51 (4th ed. 2002); *see also Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, No. 13-2289, 2014 WL 4955259, at *6 (M.D. Pa. Sept. 30, 2014) (same). Here, Proposed Intervenors can only point to the mundane procedural history, and suggest that somewhere below the surface there may be "evidence of *potential* collusion[.]" In other words, Proposed Intervenors offer no evidence, but only conjecture that some evidence might exist. This falls well short of their burden. As noted by one district court:

> However, the [intervenors] have failed to lay a proper foundation relying on outside sources evidencing proposed settlement is collusive. While the [intervenor's] counsel have speculated that Settlement counsel and [defendant] may have engaged in collusion by 'perhaps' conducted [sic] a reverse auction and failing to notify …[intervenors] counsel of the instant action, which they claim resulted in an inadequate proposed recovery and overbroad release, no outside evidence has been presented to the court in this regard. In fact, a declaration from…the mediator in connection with the proposed settlement, repeatedly noted the arm's-length bargaining of the parties' counsel[.]

*Demchak* at *7.

The same is true here. Judge Welsh has confirmed "the outcome of the mediated negotiations is the result of a fair, thorough, and fully informed arms-length process between highly capable, experienced, and informed parties and counsel." ECF No. 27 ¶ 10.

Proposed Intervenors offer no evidence of collusion, but rather surmise the existence of

"potential collusion" based on little more than the case settling. This "potential collusion" is allegedly implied by: (1) the parties' joint motion for an injunction; (2) Proposed Intervenors' failure to receive pre-notice 'notice of intent' regarding the injunction; and (3) the "possibility" of a reverse auction situation.

As explained above, injunctions are commonly sought in situations such as this one. With respect to notice of the injunction, the parties complied with the notice requirements under the Rules as Monsanto filed a motion seeking an injunction in the state court. It belies reason to suggest that two parties are 'colluding' by complying with the rules or by filing a joint motion.

With respect to the 'potential reverse auction,' Proposed Intervenors fail to grasp the key premise of an auction: competitive bidding by *multiple* buyers. "[A] reverse auction occurs in a class action when the defendant contacts and induces multiple plaintiffs' attorneys to compete against each other, with the party willing to take the lowest bid winning the right to settle the matter." *Demchak* at *2 (fn. 3). In rejecting intervenor's arguments that the parties "'perhaps' conducted a 'reverse auction[,]'" the court noted that "the materials in this case indicate that [defendant] did not contact or induce the named plaintiffs' counsel and [intervenor's] counsel to compete against each other. Instead, it was the named plaintiffs' counsel that contacted [defendant] with their claims and the offer to conduct settlement discussions." *Id.*; *see also Rescigno v. Statoil USA Onshore Properties Inc*., No. 16-85, 2021 WL 1549661, at *2 (M.D. Pa. Apr. 20, 2021) ("[a]lthough Objectors reiterate their concerns regarding a collusive settlement process and a possible reverse auction…[t]o date, Objectors have produced no such evidence"). Proposed intervenors cannot show inadequate representation simply by "float[ing] out the specter of a reverse auction." *Negrete v. Allianz Life Ins. Co. of N. Am*., 523 F.3d 1091, 1099 (9th Cir. 2008). Rather, the intervenor must provide evidence of "underhanded activity." *Id*. Otherwise, "the

'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases would settle without being accused by another of participating in a collusive reverse auction.'" *Id*. at 1099-1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1189 (10th Cir. 2002)).

Here, Proposed Intervenors acknowledge they were never contacted by Monsanto to discuss settlement. Further, with respect to this case, it was Plaintiffs who reached out to Monsanto and offered to engage in settlement talks. According to the Diane Welsh, a highly respected mediator, the parties provided (in advance of mediation) "detailed pre-mediation submissions…which included hundreds of pages of exhibits and extensive briefing on the parties' positions on liability, defenses, and damages; relevant case law, the likelihood of class certification; and the history of related actions that informed the court of the litigation." Welsh Decl., ECF No. 27, at ¶ 5. She further noted that "[t]hroughout the mediation, it was clear to me that each of the parties were represented by experienced and competent counsel, willing to litigate the matter to conclusion, if necessary[,]" and she "observed nothing that suggested any collusion[.]" *Id.* at ¶¶ 8, 9. This is a far cry from the collusive reverse auction Proposed Intervenors suggest 'might' have happened.[13]

There are additional reasons why a national settlement with the Gilmore Plaintiffs made sense. *Gilmore* was the only federal consumer fraud case on file, meaning it provided a superior vehicle for a nationwide settlement. Further, Proposed Intervenors have expressed no interest in a national settlement; thus, insofar as Monsanto sought global resolution, negotiation with Plaintiff's

---

[13] Proposed Intervenors citation to *Ross* is unpersuasive, because as noted supra (fn. 10), the proposed FDCPA settlement had an immense impact on the intervenor class recovery, by expanding the claimants from one state to all 50 states without increasing the size of the recovery. Here, by contrast, the settlement has exposed Monsanto to *greater* liability than a case limited to Missouri.

counsel was not only the best option but only option. Finally, it belies reason that Monsanto would enter into a *nationwide* settlement solely to usurp the claims of the Missouri class, where the sales of the Roundup Lawn & Garden products at issue can comprise only a fraction of national sales.

Proposed Intervenors' assertion there must be collusion because the Settlement allows Class Counsel to apply for their fees in an amount not to exceed 25% of the of potential settlement fund is baseless. It is up to the Court, not the parties, to award attorneys fees, and fees awarded as a percentage of the fund are typical in the Third Circuit. In fact, this method is meant to provide counsel an incentive to maximize recovery for the class, and 25% of the fund is routinely granted. *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005). Moreover, the Settlement specifically states that amount of fees "awarded by the Court shall have no impact on the validity of this Agreement." Settlement § F.1. Such an agreement hardly evidences collusion.

### (c)    Proposed Intervenors cannot establish "nonfeasance."

Finally, Proposed Intervenors cannot meet their burden to establish nonfeasance. Nonfeasance is the "failure to act when a duty to act exists." BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Holmes v. Gov't of Virgin Islands*, 61 F.R.D. 3, 4 (D.V.I. 1973) (describing nonfeasance as "neglect of duty"). Proposed Intervenors provide no evidence of nonfeasance, and make no argument with respect to same other than a conclusory statement that "the requested injunction is clear evidence of potential collusion or, at a minimum, nonfeasance[.]" PI Brief at 7. For the reasons provided above (with respect to the injunction), this argument fails.

### B.    Permissive Intervention is unwarranted and prejudicial.

The Federal Rules provide that "[o]n timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact…"[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P.

24(b)(1)(B), (b)(3). "Permissive intervention is completely discretionary, and where a party fails to show that a right to intervene exists, there can be no abuse of discretion in denying permissive intervention." *Granillo*, 2018 WL 4676057, at *11 (citing *Brody*, 957 F.3d at 1124). Thus. "[t]he Court is not under any obligation to permit intervention simply because there are questions of law or fact in common." *Nicholas v. Saul Stone & Co. LLC*, No. 97-860, 1997 U.S. Dist. LEXIS 23821, at *19 (D.N.J. Oct. 11, 1997). Additionally, "a court's finding that existing parties adequately protect prospective Intervenors' interests will support a denial of permissive intervention." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 249 (D.N.M. 2008) (citing *City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)); *Nicholas v. Saul Stone & Co. LLC*, No. 97-860(AET), 1997 U.S. Dist. LEXIS 23821, at *19 (D.N.J. Oct. 11,1997) ("The Court is not under any obligation to permit intervention simply because there, are questions of law or fact in common.") (*citing Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 627(D.N.J. 1982)).

The Court should deny permissive intervention for the same reasons intervention as of right is not warranted. This is the position taken by most courts in analogous situations. *See, e.g., Demarco v. Avalonbay Communities, Inc.*, No. 15-628, 2016 WL 5934704, at *6 (D.N.J. Oct. 12, 2016) (permissive intervention at preliminary approval stage unnecessary for same reasons intervention of right denied); *Granillo*, 2018 WL 4676057, at *11 (because intervenors have opportunity to object, intervention of right at preliminary approval stage not warranted, and denying permissive intervention "for the [same] reasons"); *Robertson v. Enbridge (U.S.) Inc.*, No. 19-1080, 2021 WL 2582200, at *5 (W.D. Pa. May 28, 2021) (denying permissive intervention and finding "that all of these issues discussed above under intervention as of right, apply similarly here"); *Saccoccio*, 2013 WL 5585230, at *1 (permissive intervention denied on same grounds as

19

intervention as of right; namely, "[a]nything the Movants wish to accomplish as intervenors, they can accomplish as objectors").  Tellingly, Proposed Intervenors fail to cite even one case where a court denied intervention as of right at the preliminary approval stage but subsequently granted permissive intervention.[14]

In the alternative, "granting these motions to intervene could unduly prejudice the settling parties by unnecessarily delaying their settlement." *In re Vitamins Antitrust Litig.*, No. 99-197, 1999 WL 1335318, at *4 (D.D.C. Nov. 23, 1999). ""The goals of Rule 23 would be defeated if the Court permitted every individual or entity that objected to discrete aspects of the settlement to intervene." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 336-37 (N.D. Ga. 1993). Other courts have recognized Proposed Intervenors' tactic for what it is: an attempt to bypass the preliminary approval standard and convert the preliminary approval hearing to a final fairness hearing. This is prejudicial and harmful to absent class members, as "it would be depriving settlement class members of the right to even consider the…[s]ettlement." *Allen*, 2011 WL 1706778, at *3. "Proposed settlement class members should at least have the opportunity to consider whether they believe the…[s]ettlement is fair, reasonable and adequate." *Id.*

## IV.    CONCLUSION

For all of the aforementioned reasons, Proposed Intervenors motion should be denied.

---

[14] Proposed Intervenors' interpretation of the Federal Judicial Center's "Pocket Guide for Judges" excerpt is somewhat overstated. *See* PI Brief at 18 (quoting FJC POCKET GUIDE, § IV(D)). The Guide does not say that intervention by state class action counsel is "appropriate practice". Rather, the Guide directs judges to "[c]onsider seeking preliminary input into the fairness, reasonableness, and adequacy of the proposed settlement[,]" and then cites one example of intervention. FJC POCKET GUIDE, § IV(D). Elsewhere, the Guide contemplates considering the arguments of the Proposed Interveners as objections to final approval. *Id.* at § IV(B)(6).

Dated: July 12, 2021                     */s/ William J. Rhodunda, Jr.*
                                         William J. Rhodunda, Jr. (#2774)
                                         Chandra J. Williams (#4907)
                                         **RHODUNDA WILLIAMS &**
                                         **KONDRASCHOW**
                                         Brandywine Plaza West
                                         1521 Concord Pike, Suite 205
                                         Wilmington, DE 19803
                                         Bill@rawlaw.com
                                         Chandra@rawlaw.com

                                         Gillian L. Wade (admitted pro hac vice)
                                         Marc A. Castaneda (admitted pro hac vice)
                                         Sara D. Avila (admitted pro hac vice)
                                         **MILSTEIN, JACKSON,**
                                         **FAIRCHILD & WADE, LLP**
                                         10990 Wilshire Boulevard, 8th Floor
                                         Los Angeles, CA 90024
                                         Tel: (310) 396-9600
                                         Fax: (310) 396-9635
                                         gwade@mjfwlaw.com
                                         mcastaneda@mjfwlaw.com
                                         savila@mjfwlaw.com

                                         *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2021, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

*/s/ William J. Rhodunda, Jr.*
William J. Rhodunda, Jr.
