## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SCOTT GILMORE, et al.,** | § | **Case No. 20-cv-1085-MN** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | |
| | § | |
| **MONSANTO COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### POTENTIAL INTERVENOR GARY BROWN'S MOTION TO INTERVENE

Pursuant to Fed. R. Civ. P. 24(a),(b), potential Intervenor Gary Brown[1] hereby respectfully moves the Court for leave to intervene in this action for the limited purposes of opposing Plaintiff Scott Gilmore and Defendant the Monsanto Company's joint motion to stay all present and future related proceedings.  Mr. Brown is currently a plaintiff in *Krzystof Adamkiewicz, et al. v. Monsanto Co.*, No. 19SL-01987, a Missouri state court action against Monsanto for injuries he suffered as a result of contracting non-Hodgkin's lymphoma ("NHL") from his use of Monsanto's Roundup household herbicide products.  Because Mr. Brown's similar claims against Monsanto will be impaired unless he is allowed to intervene in the present action to oppose the joint-stay motion, the Court respectfully should grant Mr. Brown's request to intervene as a matter of right.  In the alternative, the court respectfully should grant Mr. Brown's request for permissive intervention.

---

[1] Mr. Brown only appears for the narrow and sole purpose of contesting this Court's jurisdiction to enjoin his suit. Neither this request to intervene, nor his proposed brief opposing the joint injunction request, constitute either an explicit or inferential acknowledgment of personal jurisdiction over Mr. Brown, a resident of New York with no minimal contacts with this forum. Mr. Brown appears for the sole purpose of asserting that this Court lacks jurisdiction to issue the requested stay.

## I.      PROCEDURAL BACKGROUND

Mr. Brown filed his complaint against Monsanto on May 15, 2019, in St. Louis County Court in Missouri.  Ex. A.  Mr. Brown's complaint asserts claims for strict products liability, negligence, misrepresentation, and consumer fraud against Monsanto due to, inter alia, its failure to disclose that Roundup may cause NHL.  *Id*. at ¶¶ 131-220.  Mr. Brown seeks compensatory and exemplary damages for his economic and non-economic losses related to his contraction of NHL from using Roundup.  Id. ¶¶ 229-37.

More than a year after Mr. Brown commenced his action, on August 19, 2020, plaintiff Scott Gilmore filed the present action in the United States District Court for the District of Delaware.  Dkt. # 1.  Mr. Gilmore's class-action complaint asserts a single claim for Monsanto's violation of the Delaware Consumer Fraud Act.  *Id*. ¶¶ 124-42.  After only a single mediation and before commencing any discovery, *see* Dkt. # 41 at p. 14, the parties reached a class-action settlement which purports to resolve all nationwide economic-loss claims related to the purchase price of Roundup during certain specified periods.  Dkt. #59-1.

Mr. Brown alleges in his complaint that he purchased Roundup products in New York approximately from 1994 – 2014.  *Id*. at ¶ 12.  His plaintiff fact sheet further indicates that he used Roundup residential products on his yard weekly in the summer months from 1982 – 2017 at his New York residence.  Ex. B at p. 10.  Thus, Mr. Brown is potentially a "class member" within the meaning of paragraph 15 of the amended settlement agreement presented for approval in this action.  Dkt. # 59-1.

At the same time that Monsanto and Mr. Gilmore filed their class-certification motion, Dkt. # 24, they also jointly filed a motion to stay related proceedings.  Dkt. # 33.  In their joint motion, Mr. Gilbert and Monsanto seek an order staying "all pending or future state and federal

proceedings asserting Related Claims and to enjoin Settlement Class Members from initiating, maintaining, or participating in such proceedings until this Court conducts a final fairness hearing." *Id*. at p. 1.  Thus, Mr. Gilmore and Monsanto not only seek a stay of all state and federal Roundup litigation throughout the country, but they also seek a preliminary injunction against the maintenance of such actions.

For the reasons set forth in sections II and III below, if granted, the preliminary injunction will both impair and impede Mr. Brown's claims against Monsanto.  Therefore, the Court respectfully should grant his request to intervene as a matter of right, or in the alternative, allow him permission to intervene in light of the common questions of both law and fact between the two actions.

## II.    THE JOINT-STAY MOTION WILL IMPAIR MR. BROWN'S RELATED CLAIMS

Under Fed. R. Civ. P. 24(a), the Court "must" permit Mr. Brown to intervene upon a timely showing that he "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [Mr. Brown's] ability to protect [his] interest, unless existing parties adequately represent that interest."  Due to the breadth of the claims released by the potential class-settlement agreement reached between Monsanto and Mr. Gilbert, and the injunction against his maintenance of his individual action, Mr. Brown's interests will be impaired with no adequate representation if his action is enjoined until this Court conducts the final fairness hearing.

In the Third Circuit, a litigant must establish the following elements in order to intervene as a matter of right:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do

3

not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). Each element must be satisfied in order to intervene as a matter of right. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cr. 1995).

**A. Mr. Brown's Request to Intervene is Timely.**

First, Mr. Brown's motion is timely. When analyzing the timeliness of a motion to intervene as a matter of right, courts in the Third Circuit consider the following three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id*. at 369. Mr. Brown's motion satisfies all three considerations. Mr. Gilmore and Monsanto jointly moved to enjoin all related litigation on June 14, 2021. Dkt. # 33. Mr. Brown only became aware of the potential nationwide litigation injunction following the *Tomlinson* Plaintiffs' opposition, which was filed on June 28, 2021. Dkt. # 41.

Due to the unopposed nature of Mr. Gilmore and Monsanto's joint stay motion, oral argument was only finally requested by the *Tomlinson* Plaintiffs on July 29, 2021. Dkt. # 55. To the best of Mr. Brown's knowledge, the Court has not yet ruled on the *Tomlinson* Plaintiffs' request or set a date for oral argument. Therefore, there is no prejudice to any party if the Court were to allow Mr. Brown to intervene for the limited purpose of opposing the joint stay request, a matter which has not yet been set for hearing.

When considering the timeliness of a motion to intervene as a matter of right, "the critical inquiry is: what proceedings of substance on the merits have occurred? . . . This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Mountain Top Condo. Ass'n*, 72 F.3d at 369-70. Here, where no proceedings on the merits have yet occurred, and the Court has not yet ruled on the

4

*Tomlinson* Plaintiffs' request for argument on the joint stay motion, there is no prejudice to any party if Mr. Brown is allowed to intervene for the limited purpose of opposing the stay.

**B. Mr. Brown's Interests in the Litigation will be Impaired Without Adequate Representation**.

For all the reasons set forth in the *Tomlinson* Plaintiffs' brief in support of their motion to intervene, Mr. Brown should be allowed to intervene because the collusive nature of the settlement reached by Monsanto and Mr. Gilmore does not protect the interests of any other party involved in Roundup litigation against Monsanto. *See, generally,* Dkt. # 41 p. 13 – 22. Specifically as relates to Mr. Brown's interests, because the proposed class settlement operates to release a wide amount of Mr. Brown's claims beyond the mere economic damage of the purchase price of Roundup, Mr. Brown should be allowed to intervene to oppose the joint stay request.

The Third Circuit takes a flexible approach to determining whether a litigant would be sufficiently disadvantaged by a proceeding so as to justify intervention as a matter of right. "This brief review of our jurisprudence does not yield a pattern that will easily support or defeat intervention in all circumstances. Rather, the variety of factual situations and their resolution demonstrate our adherence to the elasticity that Rule 24 contemplates when compared to the rigidity of earlier practice." *Kleisser v. U.S. Forest Service*, 157 F.3d 964, 970 (3d Cir. 1998). Despite this generally flexible approach, the Third Circuit has laid out the following approach to guide requests for intervention as a matter of right.

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated.

*Id*. at 972. Because Mr. Brown has a direct interest specific to him, which is capable of clear definition, and which will be directly affected if his suit is enjoined, he should be allowed to

5

intervene as a matter of right.

Unlike the *Tomlinson* Plaintiffs and Mr. Gilmore, whose class actions are centered on economic-loss claims related to the purchase price of Roundup products, Mr. Brown's individual action seeks personal damages related to strict products liability, negligence, misrepresentation, and consumer fraud to compensate him for the cancer he suffers as a result of his Roundup use. Ex. A at ¶¶ 131-220.

Despite this difference between the fundamental nature of the actions involved, Mr. Gilmore and Monsanto nevertheless seek a nationwide injunction "of all pending or future state and federal *proceedings* asserting Released Claims and to enjoin Settlement Class Members from initiating, maintaining, or participating in such proceedings" until final settlement approval in this action.  Dkt. # 33 at p. 1 (emphasis added).  Thus, Mr. Brown's entire "proceeding" would be enjoined based on nothing more than the fact that his consumer-fraud claim arguably brings him within the ambit of the Gilmore class settlement—a point Mr. Brown does not concede.

Furthermore, the incredibly broad nature of the release contained in the proposed settlement agreement also poses a direct threat to Mr. Brown's concrete interests.  The proposed settlement purports to release all claims against Monsanto for:

> any allegedly false, misleading, incomplete, or inaccurate statement, or any alleged omission, regarding the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate . . . or any scientific claims or debate regarding the same.

Dkt. # 59-1 at ¶ (L)(1)(a).  The proposed settlement also releases all claims for:

> any alleged breach of contract or breach of warranty arising out of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof, including, but not limited to, glyphosate, or any scientific claims or debate regarding the same.

*Id.* ¶ (L)(1)(b).

> Finally, the proposed settlement broadly releases
>
> any other alleged economic loss or injury (other than those economic losses or injuries encompassed within the definitions of Personal Injury Claims or Medical Monitoring Claims) allegedly suffered by or inflicted on any Class Member because of or related to the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the Products or any ingredient or component thereof.

*Id.* ¶ (L)(1)(c). Thus, while ostensibly the present action only involves claims for economic damages related to the purchase price of Roundup products, as these release provisions demonstrate, Monsanto is also attaining the release of liability for all claims pending against it for false or misleading statements, breach of contract, and "any other alleged economic loss or injury" (except for personal injury and medical monitoring) connected to allegations related to Roundup's toxicity. These claims underpin Mr. Brown's complaint against Monsanto.

While Monsanto and Mr. Gilmore will surely retort: if Mr. Brown does not want to release his claims against Monsanto, then he can merely opt out of the settlement, this does not fully address the concrete injury Mr. Brown will suffer if he is not allowed to intervene and assert his rights. As more fully addressed in his proposed brief in opposition to the joint stay motion, attached as Exhibit C, the current procedural posture of this case would enjoin Mr. Brown's suit before he is even given the chance to opt out of the (collusive) agreement reached between Monsanto and Mr. Gilmore. Therefore, Mr. Brown will suffer a concrete injury if his suit is enjoined before he is afforded an opportunity to participate in this action.

This non-adversarial posture between Monsanto and Mr. Gilmore goes to the final factor courts weigh when considering whether to a grant a litigant the ability to intervene as a matter of right: the adequacy of the existing parties' representation of the would-be intervenor's rights. Because no party currently opposes the joint stay request, there is no one in this suit to speak for

the thousands of nationwide plaintiffs who do not wish to have their lawsuits enjoined until this Court grants potential final approval to the proposed settlement.  Mr. Brown initiated his suit in Missouri state court, a year before the present action, asserting related but mostly distinct causes of action.  Nevertheless, without opposition, Monsanto now seeks this Court's approval to stay all litigation against it nationwide, in both state and federal court, so long as that litigation potentially includes a cause of action for economic damages related to the purchase price of Roundup, and to do so before litigants even have the opportunity to opt-out of this collusive agreement.  Therefore, Mr. Brown must be afforded an opportunity to intervene and assert why he should be allowed to maintain his action without being subject to an unopposed injunction.

Because Mr. Brown's motion satisfies the four factors set forth in *Liberty Mut. Ins. Co.*, he should be allowed to intervene as a matter of right to protect his concrete interests in the maintenance of his suit until he is at a minimum afforded an opportunity to opt-out of this collusive settlement agreement.

### III.  MR. BROWN'S CLAIMS SHARE COMMON QUESTIONS OF LAW AND FACT WITH THIS ACTION

In the alternative, if the Court does not find that Mr. Brown satisfies the requirements to intervene as a matter of right, then the Court respectfully should exercise its broad discretion to allow him to intervene on a permissive basis.  Under Fed. R. Civ. P. 24(b)(1)(b), a court may allow anyone, upon timely motion, to intervene who "has a claim or defense that shares with the main action a common question of law or fact."  "District courts have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right."  *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014).  For all the reasons set forth in Section II above, Mr. Brown's Missouri-state-court action shares a number of common questions of law and fact with the instant action, especially in light of the broad nature of the

8

release provisions.

As discussed above, the proposed settlement agreement reached between Mr. Gilmore and Monsanto purports to release all claims, except for personal injury and medical monitoring, related to false of misleading statements, breach of contract/warranty, or otherwise related to "the alleged carcinogenicity, toxicity, genotoxicity, endocrine disruptive effects, or any other alleged health effects of the [Roundup] Products or any ingredient or component thereof."  Dkt. # 59-1 at ¶ L(1)(c).

Taking just a few examples from Mr. Brown's complaint, in his misrepresentation count, he alleges that "Despite the fact that Defendant knew or should have known of reports of severe risks including non-Hodgkin lymphoma, with Roundup use and exposure, this information was strategically minimized, understated, or omitted in order to create the impression that the human dangers of Roundup were nonexistent."  Ex. A at ¶ 195.  In his strict products liability—failure to warn—count, he alleges that "Monsanto is liable . . . for injuries caused by their negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of these products and the risks associated with the use of or exposure to Roundup® and glyphosate."  *Id*. at ¶ 168.

Finally, in his consumer fraud allegation, Mr. Brown asserts that "Defendant made these misrepresentations and actively concealed adverse information including the risk of non-Hodgkin lymphoma, at a time when, their agents and/or employees knew or should have known, the product had defects, dangers, and characteristics that were other than what was represented to the consuming public."  *Id*. at ¶ 206.  Thus, at a minimum, Mr. Brown's action shares common questions of both fact and law with the release provisions of the settlement agreement currently pending before this Court.  On this basis, the Court respectfully should use its discretion to allow

Mr. Brown permission to intervene to oppose the currently unopposed joint stay request which would enjoin his Missouri-state-court action.

## IV.      CONCLUSION

For all the reasons set forth above, the Court respectfully should grant Mr. Brown's request to intervene as a matter of right for the limited purpose of opposing the joint stay motion.  Because Monsanto and Mr. Gilmore jointly request a preliminary injunction that would prevent Mr. Brown from litigating the entirety of his action, he possesses a concrete interest in the litigation currently before this court that is not adequately represented by either Mr. Gilmore or Monsanto.  The settlement agreement purports to release a large number of Mr. Brown's claims, even though the present action is ostensibly centered only on damages pertaining to the purchase price of Roundup products.  This potential impairment of Mr. Brown's rights without adequate representation is further compounded by the fact that Mr. Gilmore and Monsanto seek to enjoin Mr. Brown's action before he is even afforded the opportunity to opt out of the proposed settlement.  Finally, in the alternative, Mr. Brown respectfully requests that he be afforded permission to intervene due to the significant factual and legal overlap between the two actions.


Dated: September 21, 2021                    Respectfully Submitted,

                                             /s/ *David deBruin*
                                             David deBruin (DE SBN: 4846)
                                             GAWTHROP GREENWOOD, PC
                                             3711 Kennett Pike, Suite 100
                                             Wilmington, DE 19807
                                             P: 302-777-5353
                                             ddebruin@gawthrop.com

                                             N. Majed Nachawati (TX SBN: 24038319)
                                             mn@fnlawfirm.com
                                             S. Ann Saucer (LA SBN: 21368; TX: 00797885)
                                             asaucer@fnlawfirm.com

10

Michael Gorwitz (MN SBN: 0400362)
mgorwitz@fnlawfirm.com
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

*Counsel of record for Movant Gary Brown*